Nov. Term,
1854.

HUNT
v.
FRANCIS.

---

## HUNT *v.* FRANCIS and Others.

*A.* conveyed a lot to *B.*, bounded on one side by "an alley." The alley referred to, as opened and used for several years, was sixteen feet in width; as recorded, twelve feet; leaving a strip, four by forty-seven feet, between *A.*'s line and the recorded alley, to which he had no title.

*Held*, that either alley, the recorded alley, or the alley *de facto*, would answer the description in the deed.

*Held*, also, that a grant is to be taken most strongly against the grantor.

*Held*, also, that to identify the lot conveyed by *A.* to *B.*, it was proper, in case of doubt as to which alley was meant, to look to the intention of the parties as deduced from the circumstances surrounding them: as that the land in dispute had before been conveyed by *A.* to *C.*; that the alley *de facto* was of the same width as that of which it was a continuation; that there was, at the time of sale, a fence on the line of the alley *de facto*, &c.

Where two objects or lines answer the calls of a deed, and it appears that the grantor owned up to one, but not the space between, that which the call first meets is the boundary.

*Tuesday,*
*November* 28.

ERROR to the *Dearborn* Circuit Court.

STUART, J.— Covenant by *Francis* against *Hunt* for a breach of warranty in a conveyance. *Hunt* filed three pleas. Issues of fact on the first and second pleas. The third plea led to an issue of law. Trial by the Court, and finding for *Francis*, assessing his damages at 39 dollars. A motion for a new trial was overruled, and judgment was rendered on the finding. *Hunt* excepted, and set out the evidence.

The issue of law arising on the third plea, is to be first disposed of.

The declaration alleges that *Hunt* sold and conveyed to *Francis*, with covenants of lawful seizin and general warranty, a lot of land, to-wit, part of out-lot thirty-nine, as

laid down on the original plat of *Lawrenceburgh*, and described as beginning at the south-east corner of *Canfield's* lot on *Walnut* street, and running back to "the alley" with *Canfield's* line; thence south-westerly with the alley, forty-seven feet; thence back to *Walnut* street, parallel with the first line; thence with *Walnut* street north-west to the place of beginning. Breach, that *Hunt* had no title to a strip of the lot described, viz., four feet wide and forty-seven feet long across the rear of said lot, separating the ground which *Hunt* owned and had a right to sell, from "the alley," and that the grantees had been evicted by *Morgan* and *Spooner*, the lawful owners.

The third plea alleges, that for ten years before the date of the deed, there had been, and still was, an alley opened and in public use, fenced on both sides, running along the rear end of the lot in the declaration described, as a continuation of the alley, from the *Ohio* river in a north-west direction through the town of *Lawrenceburgh*, which was the same identical alley mentioned in the deed as one of the boundaries of the lot; that at the date of the deed, he, *Hunt*, was the owner of the ground conveyed to the plaintiffs, up to the alley so open and in public use; and that the strip of four feet wide mentioned in the declaration as included in the deed and not belonging to *Hunt*, lies next to and outside of the lot conveyed, but within and parcel of the alley as the same then was, and for ten years before had been, open and in public use.

The replication admits that the four feet in controversy, for six and a half years previous to, &c., lay, and still lies, in the alley as opened and in public use; but that the alley as recorded on the plat of *Chappell's* addition to *Lawrenceburgh*, is twelve feet wide; that the four feet in question, lying between the recorded alley and *Hunt's* line, was and is owned by *Morgan* and *Spooner*, and had never been dedicated to the public; concluding with a verification, &c.

Rejoinder, that the four feet did not run across the rear of the lot as stated in the replication, but was situate in the alley as alleged in the third plea, concluding to the country.

Nov. Term, 1854.

HUNT
v.
FRANCIS.

Nov. Term,
1854.

HUNT
v.
FRANCIS.

Special demurrer to the rejoinder, showing for cause, 1. That it neither denied nor avoided any material fact alleged in the replication; 2. That as the replication admitted *Hunt* to be the owner up to the alley as opened and in public use, and that the four feet strip was in the alley as so opened and used, the question whether said strip runs across the lot which *Hunt* assumed to convey, is a question of law only.

The Court properly sustained the special demurrer to the rejoinder. But as a general demurrer it searched back through the pleadings. The replication does not seem to us to tender any material issue. It traverses the dedication; but this was matter not alleged in the plea. *The State* v. *Campbell*, 8 Blackf. 138.

It was not averred that *Morgan* and *Spooner* had made a formal dedication of the alley. And after the admission that at the time of the conveyance the alley *de facto* embraced the four feet in controversy, the mere question of dedication seems not material to the issue. Besides, if the allegation that the four feet was not included in the lot which *Hunt* assumed to convey, presented a question of law in the rejoinder, it must also be a question of law in the plea. But in the view we take of the case, the sufficiency of these pleadings is immaterial.

The evidence is all before us on the issues of fact; and a decision on that branch will be more satisfactory.

The first and second pleas were in substance that *Hunt* was the lawful owner, at the date of the deed, of the entire lot described therein; and issue thereon.

The question of dedication, and whether user for six or ten years will amount to a dedication, though strongly urged in argument, does not, as already intimated, seem to be involved. The alley might well serve as a boundary in the deed from *Hunt* to *Francis* either way, whether it belonged to *Morgan* and *Spooner*, or had been dedicated to the public; whether it be recorded, or only defined by the limits which the public had been permitted to use. In the one case it was twelve feet wide, in the other sixteen feet wide; but in both cases it answered the description of

an "alley," as that word is used in the deed. And the only matter to be determined is, which alley had the parties reference to when the deed was made—the alley as existing in law and defined on the recorded plat, or the alley in fact as opened and used for several years.

It appears from the evidence that *Hunt* owned six acres of land adjoining *Lawrenceburgh*, four acres of which he sold to *Chappell*, and fenced in the residue, placing the fence on or near the line between his own land and *Chappell's*. The latter laid his four acres off in lots, and recorded it as an addition to *Lawrenceburgh*, making the streets and alleys correspond with those of the town, except the alley next to *Hunt*. The alley of which this was a continuation was sixteen feet wide. It appears that *Hunt's* line corresponded with the south line of the extension, thus throwing the whole sixteen feet alley on *Chappell's* land. To compel *Hunt* to pay for half the alley, *Chappell* recorded it twelve feet wide, leaving a strip of four feet wide on the south side of the alley, cutting off *Hunt* from access to the recorded alley through the whole length of his line. Meanwhile *Chappell* sold to *Morgan* and *Spooner*. They fenced on the north side, along the line which defined both the recorded and the *de facto* alley, and opened the fence at the ends, thus making the alley *in fact* correspond with that of which it was a continuation—*Morgan* and *Spooner's* fence defining it on one side, *Hunt's* on the other.

In this position of things, *Hunt* sold to *Francis*, describing the parcel of land conveyed as commencing on *Walnut* street; thence back to "the alley;" thence along "the alley," &c.

It is unnecessary to notice the title papers offered in evidence. But it may be deemed important to state that the strip four feet wide along *Hunt's* line, is expressly included and described in *Chappell's* deed to *Morgan* and *Spooner*. These title-deeds were all properly in evidence; yet, of themselves, they do not solve the question in controversy. It is still necessary to identify the ground actually conveyed by *Hunt* to *Francis*.

In this state of ambiguity, we must, it seems, look to

the intention of the parties, as deduced from the circum-stances which surrounded them. *Salisbury* v. *Andrews,* 19 Pick. 250.—*Hodges* v. *Strong,* 10 Verm. 247.—*Mayo* v. *Blount,* 1 Ired. 283.— *Venable* v. *McDonald,* 4 Dana 336.— *Thatcher* v. *Howland,* 2 Metcalf 41.

Nor are we at liberty to overlook the rule, that a grant is to be taken most strongly against the grantor.

Let us first inquire what, from all the circumstances, *Hunt* meant to convey? He knew the line dividing the parcel of land sold to *Chappell* from that retained; for he had placed his fence on that line about the time of the sale. He had constructive notice of the plat recorded by *Chappell,* and that there was four feet between his land and the recorded alley. Like every one else, he knew the law—knew the consequences of conveying land to which he had no title. He had seen that after *Morgan* and *Spooner* became the owners, the alley was thrown open to its full extent, corresponding with the alley of which it was a continuation. He was aware that for years the public had been permitted to use it, .thus opened, as an alley. Under all these circumstances, the plain inference. is, that *Hunt,* in his deed to *Francis,* meant the sixteen feet alley as opened and used.

How was it with the Messrs. *Francis,* the vendees? They had at least constructive notice of *Chappell's* recorded plat. *Hunt's* fence was on the line at the time they purchased. They could see that the fence corresponded with one side of the alley extended from the old plat through the new. That fence was a monument. If instead of being a rail or board fence, it had been cut stone, with iron railing on the top, it would have been a monument so marked, on the line of the alley *de facto,* as to leave no doubt of the intention of the parties, or which alley they had in contem-plation. The fence that was there was a monument of the very same kind, though less in degree, less fixed and permanent. Still, in the absence of any fraud or misre-presentation as to the boundary on the part of *Hunt,* that fence, with the other circumstances surrounding the parties, is an almost unfailing index to the mind and intentions of

Nov. Term, 1854.

HUNT
v.
FRANCIS.

the vendees. In other words, they bought with reference to the alley as then used and the lot as thus defined.

From the whole circumstances, therefore, it is clear that both the vendor and the vendees treated the alley, in common with the public generally, as a sixteen feet alley. The length of time it had been used, the manner in which it was opened, and its correspondence with the other alleys, had induced the belief that it was permanently opened to the public. It was accordingly, in the contemplation of both parties, referred to in the deed as a boundary.

Nor could the Court presume in the face of the facts, viz.: that *Hunt* had already conveyed up to the line of the alley *de facto;* that *Morgan* and *Spooner* were the owners of the strip, four feet by forty-seven, between the exterior line of the alley *de facto* and the corresponding line of the alley *de jure;*—from these facts the Court could not presume that *Hunt* intended to convey the strip in question. Indeed the contrary is strongly implied. Had *Hunt* actually owned up to the recorded alley, then construing the deed most strongly against the grantor, would have carried the boundary up to the line of *that* alley. But we can not carry the presumption against a vendor to such an extent as to convey land to which he has no title, unless the terms of the deed, or the fraudulent misrepresentations of the vendor as to boundary, show that such was the intent.

The rule is this: Where there are two objects or lines answering the calls of the deed, and it appears that the grantor owns up to the first, but does not own the space between the two, that which the call first meets is the boundary. So that whether the alley was private property, or had been dedicated to the public, was wholly immaterial; for it answered the purpose of a boundary equally well either way. In the contemplation of both the grantor and grantees, the fence on *Hunt's* line, between his land and the alley as open and used by the public at the time of the conveyance, was the boundary described in the deed thus: "thence south-westerly with the alley forty-seven feet."

By any other construction, we would involve ourselves

CASES IN THE SUPREME COURT

in endless embarrassment and absurdity. We would be imputing to *Hunt* the fraud of conveying to *Francis* four feet by forty-seven, which he had already conveyed to *Chappell*, and which lay outside of the fence or monument erected as a boundary, and standing there at the time of the conveyance. And as to *Francis*, we know of no consideration upon which he could even fancy that any other boundary than the fence was intended. It was at least sufficient to put *Francis* on inquiry.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*D. S. Major*, *A. Brower*, and *J. Ryman*, for the plaintiff.
*P. L. Spooner*, for the defendant.