ARKANSAS FIRE INSURANCE COMPANY *v.* WILSON.

Opinion delivered March 3, 1900.

INSURANCE POLICY—OWNERSHIP CLAUSE—FORFEITURE.—A policy of fire insurance which provides that, if the interest of the insured becomes other than the entire, unincumbered and sole ownership, the policy shall be be void, unless agreement therefor is indorsed on the policy, is not forfeited because the insured entered into an executory agreement in writing to sell, if no deed passed, and no possession was given. (Page 558.)

Appeal from Faulkner Circuit Court.

JAMES S. THOMAS, Judge.

### STATEMENT BY THE COURT.

This suit was brought by appellees to recover on a fire insurance policy. The defense was that the policy was void because of a violation of a provision of the policy "that if the property be unoccupied for more than fifteen days, consecutively, the policy would be void, unless agreement therefor was indorsed on the policy;" also, because of a violation of the provision "that if the interest of the assured became other than the entire, unconditional, unincumbered and sole owner-

ship, the policy should be void, unless agreement therefor was indorsed on the policy." The answer enumerates four particulars in which this provision was violated, namely: "First, that the property had been placed in the hands of a receiver, and was burned while in his hands; second, that at the July term, 1896, of the Faulkner circuit court, judgments had been rendered against Wilson, which were liens on the property; third, that Wilson had sold the property before the fire; fourth, that at the April term, 1897, of the Faulkner probate court a judgment had been rendered against Wilson, as administrator, which was a lien on the property."

The cause was submitted to a jury, who, after hearing the evidence and instructions of the court, rendered a verdict in favor of the plaintiffs (appellees). Judgment was entered, and this appeal duly prosecuted.

*J. H. Harrod*, for appellant.

The provision as to change of ownership is reasonable and valid. 62 Ark. 348; 63 Ark. 187: The mailing of appellee's acceptance of the proposition of Dunaway completed the sale. 47 Ark. 519. If the contract was made, the mere fact that it was subsequently abandoned by the parties would not prevent a forfeiture of the policy. 32 N. W. 514. The change of ownership was within the meaning of the clause in the policy, and worked a forfeiture of same. 59 Minn. 269; 2 Hun, 540. It was the duty of the court to declare that the letters completed a contract for sale. 2 Pars. Cont. 638 n. A judgment is an incumbrance. 40 Md. 620. The court erred in excluding the assignment and transfer of the policy by appellee. 25 Ark. 380. The questions upon which special findings are directed must be stated in writing. Sand. & H. Dig., § 5831.

*Jno. G. B. Simms, E. A. Bolton, J. T. Young* and *Sam Frauenthal*, for appellee.

There was no such change of ownership or interest as would avoid the policy in this case. 71 N. Y. 396; 14 Hun, 299; 1 May, Ins. § 276; 26 E. D. Smith, 206; 92 N. Y. 51; 101 Ind. 392. The decisions of the probate court on the motions to retax costs were not judgments, and are not encumbrances

on the property.  Freeman, Judg. § 13; 2 Black, Judg. § 407. Probate judgments are not liens upon real estate.  Sand. & H. Dig., § 4200; 36 Ark. 257.  The question as to whether or not there was a sale of the property was fairly submitted to the jury upon proper instructions, and their decision is final.  An agreement to sell is not a change of ownership.  32 Neb. 645; 62 Ia. 83; 59 Pa. St. 479; Biddle, Ins. § 206; Richards, Ins. § 147; 17 Ia. 176.  There was not even such a contract as would be specifically enforced.  1 Ark. 421; 4 Wall. 513; 71 U. S. 435; 13 N. W. 506; 1 White & Tud. Lead. Cas. Eq., pt. 2, 120 (Am. notes).

WOOD, J., (after stating the facts.)  The propositions upon which appellant relies for a reversal are:

First.  That the conditions of the policy were broken, and the policy thereby forfeited, and upon the undisputed facts the court should have directed a verdict for defendant.

Second.  That the court erred in not declaring that the evidence showed a sale of the property by Wilson to Dunaway.

Third.  That the court erred in not giving the sixth instruction asked by defendant.

Fourth.  That the court erred in refusing to permit the defendant to introduce in evidence the judgments against Wilson.

Fifth.  That the court erred in refusing to allow defendant to read in evidence the transfer of the policy to Kincheloe.

Sixth.  That the court erred in directing the jury to find a special verdict as to whether there had been a sale of the property.

We will consider these in the order named.

It is contended that the policy was forfeited by a sale of the property to one Dunaway.  The proof upon this proposition was substantially as follows:  Dunaway testified that he bought the property from Wilson; that he wrote Mr. Wilson a letter making him an offer for the property, and received in answer the following letter:

"PETTUS, ARK., May 6, 1897.

"Mr. J. G. Dunaway.  Kind Sir: I will take your proposition in regard to my place at Conway.  I would have written to you

sooner, but I saw Mr. Collier and Bolton and Young and they advised me to wait until I heard from the. Building & Loan. So I will be up to Little Rock about next Sunday or Monday, and I will stop and see you if you are in. I told your pa that I would let you have the place at your figures. So I will see you soon. Yours truly,    [Signed]    J. B. WILSON."

He says he paid Wilson $2.50 on the property when he bought it; that this payment was made on the 13th of May, 1897,—two days before the fire; that on the 12th of November, 1897, Wilson tried to get him to take the money back that he had paid. He did not take possession or exercise any control over the property. On May 17, 1897, he wrote Wilson the following letter:

"May 17, 1897.

"J. B. Wilson, Esq., Pettus, Ark.

"Dear Sir: I suppose that you have heard before this that your house was burned on last Friday night. I believe pa wrote me, so I guess this will break into our trade. There was a mistake or two in the deed anyway, and I had prepared new deed for you to sign, but will not send it now until matters are settled. I understand that you have $1,500 insurance on it; so, if you can get that, it will no doubt help you out. Pa stated that there was a man by the name of Jones in the house at the time, and that it was not known how the fire caught. Please bring the deed in with you when you come.

"Yours truly,    J. G. Dunaway."

Dunaway says, he supposed he used the language "your house was burned" in the letter just hurriedly, in writing same; says he had written a deed for the property, and Wilson had consented to the terms of it, but had never signed and returned it. The proposition he made Wilson was to give him $100, and assume the mortgage that the building and loan association held, and that was the proposition he answered in the letter of May 6th. Dunaway said he never wrote the building and loan association a letter agreeing to assume the Wilson mortgage, and never told any one representing it that he would assume the mortgage, but considered that he had assumed it. He never took any receipt for the $2.50 he paid

Wilson at the time of the trade; never tried to enforce specific performance.

Wilson on this point testified that he never sold the house to Dunaway; that he borrowed $2.50 from Dunaway, but did not accept it as payment for the house. He and Dunaway were just talking about a trade. He offered to pay the $2.50 at one time when there were no witnesses, and at another time when he took witnesses with him, but Dunaway would not take it.

At plaintiffs' request the court instructed the jury as follows: "The court instructs the jury that if you believe from the evidence that the defendant did insure the plaintiffs' frame building on the lot described in the policy for $1,500 against direct loss by fire from September 29, 1894, to September 29, 1897, and that said building was, between said dates, totally destroyed by fire, and that no condition contained in the policy of insurance was violated, then you will find for the plaintiffs the amount for which said building was insured by said policy." And at the defendant's request, on this point, as follows: "(3. You are instructed that if you find from the evidence that at any time after the issuance of the policy, and before the fire, the interest of Mr. Wilson in the insured property became other than entire, unconditional, unincumbered and sole ownership, you will find for the defendant (except the mortgage of the plaintiff building and loan association.)" But refused to grant defendant the following requests: "(5) You are instructed that the evidence shows that Wilson sold the property to Julian and Sharp Dunaway, and that such sale forfeited the policy, unless you find that the defendant's agreement or consent was indorsed on the policy, or was otherwise given. (6) If you find from the evidence that, after the issuance of the policy, and before the fire, Julian and Sharp Dunaway made to J. B. Wilson a written offer to buy the property insured for $100, and assuming the mortgage to the building and loan association, and that J. B. Wilson before the fire accepted the offer, in writing, you are instructed that this avoided the policy, unless defendant consented thereto, and plaintiffs cannot recover in this action."

The instruction given at plaintiffs' request was proper, as

was also No. 3 given at the request of the defendant. No. 5 was properly refused. The evidence, at most, only showed an executory contract for the sale of the property. There was no sale, but only an offer on the one side and an acceptance of such offer on the other, but the absolute sale could not take place until the execution and delivery of a deed to the property. But as to whether or not the written offer of Dunaway to buy the property, and the acceptance thereof by Wilson, constituted a breach of the policy which barred recovery, was a question for the court, and not for the jury. The offer was shown to have been in writing, and the acceptance was in writing. Judge Parsons, in his chapter on the interpretation and construction of contracts, lays it down as the very first rule "that what a contract means is a question of law." 2 Pars. Cont. (8 Ed.), pp. 492, 610, and authorities cited.

The court, then, should have granted appellant's request No. 6, *supra*, if an executory contract of that kind would avoid the policy, under the provision that "the policy should be void if the interest of the assured became other than the entire, unconditional, unincumbered and sole ownership." This is the real and only serious question in the case. In proceeding to a discussion of this provision of the policy, we must remember that such clauses are always and justly construed, when there is any doubt about the intent, with the utmost strictness against the insurer, and always with reference to their own legitimate object, *i. e.*, the protection of the insurer against risks that are materially different from those which he has undertaken. *Smith* v. *Phœnix Ins. Co.*, 91 Cal. 323. As Judge Dillon expresses it: "The object of the insurance company, by this clause, is that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or less interest and watchfulness in guarding and preserving it from destruction by fire." *Ayers* v. *Hartford Fire Ins. Co.*, 17 Ia. 176.

We think there is sufficient ambiguity in the condition under consideration to invoke the application of the rule that courts do not favor forfeitures under such provisions. *Chandler* v. *St. Paul F. & M. Ins. Co.*, 21 Minn. 85; *Symonds* v.

*Northwestern Mut. Life Ins. Co.*, 23 Minn. 491; *Hoffman* v. *Aetna Fire Ins. Co.*, 32 N. Y. 405, 414; *Catlin* v. *Springfiela Fire Ins. Co.*, 1 Sumner, 434–40; *McAllister* v. *New England Mut. Life Ins. Co.*, 101 Mass. 558; *Kentucky Mut. Ins. Co.*, v. *Jenks*, 5 Ind. 103.

It is a matter of nice discrimination to determine whether the word "interest," as used in the condition, is synonymous with the word "title," or whether it means that and something besides. The authorities generally establish the rule that where the condition is against any change in the legal title, an executory contract of sale is not a violation of the condition, so that if the word "interest," as used in this proviso, meant "title," there would be no difficulty in reaching the conclusion that the policy was not forfeited. *Smith* v. *Phoenix Ins. Co.*, 91 Cal. 323; *Kempton* v. *State Ins. Co.*, 62 Ia. 83; *Grable* v. *German Ins. Co.*, 32 Neb. 645; *Washington Ins. Co.* v. *Kelly*, 32 Md. 421; *Home Ins. Co.* v. *Bethel*, 142 Ill. 537; *Masters* v. *Madison Co. Mut. Ins. Co.*, 11 Barb. 624; *Hill* v. *Cumberland Valley M. P. Co.*, 59 Pa. 474; *Browning* v. *Home Ins. Co.*, 71 N. Y. 508.

What, then, does the word "interest" in the provision, "if the interest of the assured be or become other than the entire, unconditional, unincumbered and sole ownership of the property," etc., mean? Is it synonymous with "title"? In *Gibb* v. *Philadelphia Fire Ins. Co.*, 59 Minn. 267, the provision was: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance," etc. The facts, as they pertained to this provision, were that the assured had made a contract in writing whereby he sold and agreed to convey to the grantee the insured premises, by deed of warranty, on prompt and full performance by her of the agreement, which was that she (grantee) was to pay therefor the sum of $2,500, $300 cash, and $1,000 in installments of $50 every sixty days thereafter until paid; the balance to be paid in assuming a certain mortgage. The grantee was to have possession of the premises until default in payment,

and in case of default she agreed to surrender possession on demand, and that the agreement should be void at the option of the vendor. She (the grantee) entered into possession of the buildings and premises, and occupied the same until the time of the fire, and made all her payments during that time, and was not in default in any manner upon said contract. Upon these facts, the court ruled that there was a forfeiture of the policy. In *Germond* v. *Home Ins. Co.*, 2 Hun, 540, a policy of insurance provided that if the property should be sold or conveyed, or the interest of the parties therein changed, it should be null and void. After the issuing of the policy, the owner contracted, under seal, to sell the property conveyed thereby to one S., who paid part of the purchase price. In an action upon the policy it was held that such contract of sale and payment constituted a change of interest in the property insured, and rendered the policy void. These cases are relied upon by the learned counsel for appellant to support his contention for a forfeiture of the policy, and, indeed, they are more nearly in point than any others we have been able to find. In the Minnesota case, there is a very marked difference in the language of the provision from that in the case at bar. That provision is, "if any change, etc., take place in the interest, title, or possession." Here the grammatical arrangement and punctuation (a comma being used between the words "interest" and "title") would indicate clearly that "interest" and "title" were intended to represent different ideas,—were not used synonymously,—while in the provision of the policy under consideration "if the interest of the assured be or becomes other than the," etc., "sole ownership," there is nothing to indicate that the word "interest" was used in any other sense than as synonymous with ownership or title. The New York case, however, on this point is perfectly analogous, and directly decides, under the facts of that case, that the policy was forfeited. But, if we concede upon the authority of these cases, that the word "interest" is not used synonymously with "title," the question still remains, was there such a change of interest under the facts of this case as, in the contemplation of the parties, worked a forfeiture? In the Minnesota case, above, there

could be no question about that, for the reason that the grantee had gone into and was in possession at the time the loss occurred, and had fully complied with the terms of the contract, which was definite as to the manner and time of performance. Likewise, in the New York case, the contract was under seal, and, we may therefore assume, was definite and certain in its terms. A part of the purchase price had been paid,—how much is not stated. In both cases, the courts might very well have concluded that the contracts to convey conferred rights on the grantee therein, capable of enforcement according to their terms, which materially changed the status of the insurer and the insured toward each other, as to the risks to the premises, which such condition is intended to protect against. Not so under the facts here. Dunaway had made a proposition by letter to buy the premises, which is definite in nothing, except the amount he was to pay. Wilson accepted the proposition. There was no proof as to when the contract was to become executed. Dunaway says he paid $2.50 on the purchase price just two days before the fire occurred, and that the money was paid when the trade was made. Wilson denies that the $2.50 was paid as purchase money. But it is evident that, under the indefinite executory contract (if we may so call it) for the sale of the property, same was not to be performed until after the loss occurred, because a part of that performance on the part of Dunaway involved, in addition to the payment of $100, the assumption of a mortgage; and, of course, the deed was not to be executed and delivered, and possession taken by Dunaway, until the purchase money was paid. At least, such would be the presumption, in the absence of proof to the contrary. Under such circumstances, the loss by fire would necessarily fall on Wilson. He still had the insurable interest in the property. He could not, after the fire, have compelled Dunaway to take the place. *Wells* v. *Calnan*, 107 Mass. 514, and authorities cited.

Both parties seemed to have recognized the fact that the letters were simply an offer by the one to buy, and an agreement by the other to sell, at sometime in the future, when the

purchase money should be paid, and the deed made and delivered. Before that time came, both recognized that the consideration had failed, and the contract was not enforceable. We are of the opinion that the alleged contract for the sale of the premises did not in any manner affect the risk which the parties to the contract of insurance contemplated and provided against in the condition named. Hence the court did not err in refusing to grant appellant's request for instruction numbered six.

The other grounds urged for reversal are not well taken. The judgment of the Faulkner circuit court is, therefore, in all things affirmed.