## EMERSON v. STEVENS GROCER COMPANY.

### Opinion delivered June 20, 1910.

1. CONTRACT—MEETING OF MINDS.—Before there can be a contract formed and entered into, there must be a meeting of the minds of both parties to the terms of the agreement. (Page 425.)

2. SALE OF CHATTELS—WHEN COMPLETE.—A binding contract of sale may be entered into by letters and telegrams; and when an offer is made, either by letter or telegram, and such offer is accepted, the contract is complete. (Page 426.)

3. SAME—FORM OF ACCEPTANCE.—Unless the parties have expressly stipulated otherwise, it is not necessary that an offer or acceptance should be in any particular form. (Page 426.)

4. SAME—WHEN COMPLETED.—Where a contract is actually entered into, whether by correspondence or by word of mouth, the agreement becomes effective at once, although it was expected that the terms of the contract would afterwards be reduced to writing and signed. (Page 426.)

5. SAME—ACCEPTANCE OF OFFER—INSTRUCTION.—Where defendants offered to sell potatoes to be delivered at Newport, and plaintiff accepted the offer provided they should be delivered at Marianna, and inclosed a check in part payment, which was retained and collected by defendants, it was error to instruct the jury that the acceptance of the check was conclusive proof that defendants accepted plaintiff's proposition. (Page 427.)

6. SAME—SUFFICIENCY OF ACCEPTANCE OF OFFER.—Where defendants offered to sell to plaintiff potatoes to be delivered at Newport, and plaintiff proposed to buy them if delivered at Marianna at same price, and inclosed a check in part payment, which was retained and collected by the defendants, it was a question for the jury whether the retention of the check was an acceptance of plaintiff's counter proposition, or whether it was retained awaiting negotiations; also whether it was retained for an unreasonable time. (Page 427.)

Appeal from Jackson Circuit Court; *Charles Coffin,* Judge; reversed.

*John W. & Joseph M. Stayton,* for appellant.

To constitute a binding contract, there must be an offer and an acceptance. 90 Ark. 133; 52 Ind. 286; 4 Col. 353; 37 Ia. 186; 40 La. 402; 1 La. 190; 10 La. Ann. 120; 24 *Id.* 620; 105 Ill. 43; 42 N. Y. S. 578; 30 Ark. 186; 100 S. W. 271; 111 S. W. 668. The correspondence was simply preliminary, and not a final contract. 86 Hun 374; 2 Cranch, C. C. 143; 108 Cal. 666; 1 Mart. (U. S.) 420; 30 La. Ann. 117; 30 La.

Ann. 316. The question as to whether there was a contract should have been submitted to the jury. 141 N. C. 277; 8 Pa. Sup. Ct. 424; 35 N. J. Eq. 266; 53 Pa. St. 373; 2 N. Y. St. Rep. 218.

*Jones & Mack,* for appellee.

The acceptance and retention of the check involved the acceptance of the condition. 55 N. E. 717; 138 N. Y. 238; 33 N. E. 1035; 20 L. R. A. 785. Correspondence may result in a contract, although there is an agreement that it will later be reduced to writing. 29 L. R. A. 431; 144 N. Y. 209; 88 Wis. 622; 10 Bush 632.

FRAUENTHAL, J. This was an action for the recovery of damages for the breach of an alleged contract of sale of a car of potatoes. The appellants were merchants, located at St. Paul, Minn., and were engaged in the business of selling goods by the wholesale. The appellee was a corporation doing business at Newport, Ark. The appellee alleged that the appellants had contracted to deliver to it at Marianna, Ark., a car of potatoes at an agreed price during the first half of February, 1908, and that they had wholly failed to do so; and it sought to recover from appellants the damages which it had sustained by reason of said breach of said contract. The appellants denied that they had entered into any contract for the sale of said potatoes. The negotiations leading up to the alleged consummation of said contract were conducted by letters and telegrams. On December 23, 1908, the appellee wrote to appellants from Newport, Ark., as follows:

"Quote us not later than Saturday, December 26, prices, Triumphs, Early Rose, Burbank and Peerless seed potatoes for February shipment."

Appellants wired on the 25th:

"Triumphs dollar fifteen, Peerless, Rose ninety, Burbank eighty seven bushel, sacked, delivered."

Appellants also wrote appellee on the 26th:

"On receipt of your letter we at once wired you our price seed potatoes. It seems our crop, especially Triumphs, short and will no doubt be high."

Appellee on the 28th wired:

"Accept one car yours twenty-fifth. Specifications follow by mail."

Appellee wrote appellant on the 29th:

"This will confirm our wire order of the 28th, for one car seed potatoes for Marianna, Arkansas, shipment, same to be made in first half of February, specific shipping date to follow. Of course, you understand that these are to be genuine Northern potatoes, and we want them put up in 150 pound even weight sacks. Ship as follows:

210 bags Triumphs, at........................$1.15
35 bags Early Rose, at........................ .90
4 bags Burbanks, at........................ .87

"Ship direct, sending all papers to us here at Newport. Draft through the Arkansas Bank & Trust Co."

Appellants answered on the 31st:

"We have your mail order for car seed potatoes to be shipped first half of February to Marianna, Ark. We find the freight rate to Marianna is 5c cwt., or 3c bushel higher than to Newport. We suppose you had figured on the advance freight. On all future orders we demand $100 on car on contract. Please mail us your check, and we will return you your signed contract."

On December 29, appellants had written to appellee in regard to the telegram of December 28, as follows:

"We have your night wire, order car potatoes. You understand that our quotation was for reasonably prompt shipment. Hope to receive full specifications in a few days, so we can make the shipment."

On January 2, 1909, appellee wrote to appellants as follows: "Yours of the 29th at hand, and you are evidently mistaken as to the time of shipment of car as purchased of you by wire December 28. If you will refer to our letter of December 23, you will note that we ask plainly for price for February shipment, and you say nothing about when shipment was to be made, and naturally took your price for answer to our letter as referred to above. Hoping that you will see this as we do, and wishing you a prosperous year, we remain, very respectfully, etc." Appellants answered on the 4th:

"Answering yours of the 2d, we will waive the time of shipment, providing you send us your check for $100 on con-

tract.    We will mail you contract on receipt of your check, and ship the potatoes first of February.  Let us hear from you promptly."

On January 6, 1909, appellee then wrote to appellant as follows:

"Inclosed.find our check for $100 to apply on contract for Marianna.   Your competitors are offering us same price delivered Marianna, as Newport, as that place takes Little Rock rate. We will expect you to do as much for us as your competitors."

The above check was deposited by appellants in bank at St. Paul on February 9, and was paid by the bank at Newport, upon which it was drawn, on January 14, 1909; but the appellants did not make any reply to the letter of January 6 immediately upon its receipt.   On January 11, 1909, the appellee wired to appellants, asking them to quote prices on another shipment of potatoes to be delivered at Diaz, Ark., and on the same day appellants replied by wire, giving quotations and also in said telegram stated:   "Marianna rate as written must have additional freight."   The appellee made no reply to this portion of the telegram relating to the Marianna shipment, but on January 21, 1909, wrote to appellants as follows:   "Inclosed find check for $300 to apply $100 each on the three cars as follows: Newport, Newark and Swifton.   Please send us signed contract for these as well as for the Marianna car as sent you some time ago."

On January 23, 1909, appellants wrote to appellee as follows:   "We have your checks this morning for all the cars but Marianna, as there was some misunderstanding regarding this order.  We herein return you that order, which we have cancelled."

On January 25, 1909, appellee wrote to appellant that it had in its letter of January 6 sent check for $100 on the Marianna shipment, and that the contract for sale thereof was thereby consummated.   On January 27, 1909, the appellants wrote to appellee, denying that any contract had been made for the Marianna shipment, and returned to appellee check for $100. This check the appellee returned to appellants on January 29, claiming that the contract for the purchase of the Marianna car of potatoes had been fully consummated.

The appellants introduced testimony tending to prove that when they received the letter of January 6, 1909, with inclosure of check, they deposited the check in bank and held its proceeds pending the further negotiations for arriving at an agreement relative to the price of the potatoes ordered for Marianna shipment, and that when they learned that no agreement could be arrived at they at once returned the amount to appellee, and that they did not accept the suggested offer or counter-proposition contained in that letter.

At the request of the appellee the court amongst other instructions gave the following to the jury:

"3.    If you find that, upon plaintiff ordering a car of potatoes on Newport quotations delivered at Marianna, defendant notified plaintiff that delivery at Marianna would be at a higher rate, and would require a deposit of $100 for future delivery, and that plaintiff remitted the amount, but asked a modification to the Newport rate, and defendants accepted and used the check so sent, without further notice to plaintiff, it would be an acceptance of the order for the carload of potatoes unless directly declined by defendants, and would be a contract."

The jury returned a verdict in favor of appellee.

The sole question involved in this case was whether or not there was a contract entered into between the parties by which the appellants sold to appellee a car of potatoes to be delivered at Marianna, Ark., at the prices quoted by them in their telegram of December 25, 1908. This is, we think, under the testimony adduced in the case, a mixed question of law and of fact. It is well settled that, before there can be a contract formed and entered into, there must be a meeting of the minds of both parties to the terms of the agreement. There can be no binding contract of sale until the parties have agreed to the same proposition which is the subject of the contract. There must be an offer to sell upon the one hand and an acceptance of the same offer before it can be said that the contract of sale has been consummated. Mere negotiations for entering into the contract will not suffice, but the proposition to which the negotiations lead for the agreement must be finally assented to by both parties. So, in determining whether or not a contract of sale has been made, the material inquiry is: did the minds of the parties meet and did they mutually assent to the

same thing? *Priest* v. *Hodges,* 90 Ark. 131; Tiedeman on Sales, § 33.

A binding contract of sale may be entered into by letters and telegrams; and when an offer is made either by letter or telegram, and such offer is accepted, the contract is complete and binding. Unless the parties have expressly stipulated otherwise, it is not necessary that the offer or the acceptance should be in any particular form. 1 Mechem on Sales, § 241; *Rankin* v. *Mitchem,* 141 N. C. 277; *Kempner* v. *Cohn,* 47 Ark. 519.

If the contract is actually entered into and made, whether by messages, correspondence or by word of mouth, the agreement becomes at once effective, although it was expected that the terms would afterwards be embodied in a written instrument and signed. The mere reference to a future contract in writing would not negative a present contract if the terms thereof were actually assented to by both parties. The written draft of the contract would only be a convenient record of the agreement and the evidence thereof, but it would only constitute evidence of the agreement, and its absence would not affect the binding force of the contract that was closed. Therefore, if an unconditional offer is made, and that offer accepted, this will constitute an obligatory contract, although the parties also understand that a written contract embodying the terms should be drawn and executed. *Bell* v. *Offutt,* 10 Bush 632; *Green* v. *Cole,* 103 Mo. 70; *Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209; *Cheney* v. *Eastern Trans. Line,* 59 Md. 557. So, in the case at bar, the appellants by telegram made to appellee a definite proposition for the sale of a car of potatoes, and when by wire the appellee accepted that offer the contract became complete, although it was also understood that the terms of the contract were to be put into a formal writing and signed. But the offer made by appellants in their telegram of December 25 was to deliver the potatoes at Newport, Ark., the place from which they received the inquiry from appellee. In its letter of January 29 the appellee in effect desired to change the contract by requesting that the potatoes be delivered at Marianna, Ark. To this the appellants did not assent unless they did so upon the receipt of the letter from appellee dated January 6, 1909. The question then is, not whether the terms of the contract were to be embodied in a formal writing and executed,

but whether or not the parties actually assented to the same terms of the contract and the same proposition. By this letter of January 6, 1909, the appellee in effect made to the appellants a counter proposition, in which they offered to take the potatoes if they were delivered at Marianna at the same prices quoted in the telegram of December 25 for delivery at Newport.

Before there could be a contract obligatory upon appellants, they must have assented to the offer thus made by appellee. Under the testimony adduced in this case this was a question of fact for the determination of the jury, and not one of law. The mere fact that the appellants received the check which was sent to be applied upon the offer made in the letter of January 6 would not be conclusive proof of such acceptance of the offer by appellants. If the check was sent upon the condition that, if appellants accepted it, that should be an acceptance of the counter proposal for the potatoes, and the appellants, so understanding it, accepted the check, then the counter offer made by appellee in the letter would be accepted by appellants. *Barham* v. *Bank of Delight,* 94 Ark. 158. But whether or not the appellants accepted the check with such understanding was a question to be determined by the jury. The mere retention of the check was only evidence of such acceptance, and not conclusive proof thereof. If the appellants retained the check for an unreasonable time without notifying appellee that they only retained it for the purpose of waiting negotiations looking to the agreement of the parties to the terms of the contract, or failed to return it within a reasonable time, then the jury might infer from such action and conduct on the part of appellants that they actually did accept the terms of the offer contained in the letter of January 6 for the purchase of the potatoes. We think that under the testimony it was a question of fact for the jury to determine whether or not the appellants accepted the check upon the terms and in assent to the offer set out in appellee's letter of January 6, or whether they only held it awaiting negotiations; and that it was also a question of fact for the jury to determine whether under the circumstances of this case they retained it for an unreasonable time. But by the above instruction number 3 the court in effect instructed the jury that the retention and collection of the check

by appellants was as a matter of law an acceptance of the offer of contract made in the letter of January 6 and an assent to its terms by appellants.

We are therefore of the opinion that the court erred in giving the above instruction number 3 at the request of appellee, and that it should have been modified so as to conform with the principles set out herein.

We have examined the other instructions given at appellee's request and those which were requested by appellants and refused, and we find no prejudicial error in the rulings of the court thereon, when said above instruction number 3 is modified as above indicated.

For the error in giving the above instruction number 3, the judgment is reversed, and the cause remanded for a new trial.