## SKEEN v. ELLIS.

Opinion delivered December 16, 1912.

1. CONTRACT—WHEN BINDING.—Where the parties to a contract agree upon its terms and intend to become immediately bound by it, there is a complete contract although they intend to embody its terms in a written instrument to be subsequently executed by them. (Page 516.)

2. CONTRACTS—FORMALITY—LETTERS.—A contract may be made by letters; and a mere reference in them to a future formal contract will not prevent their constituting a binding agreement. (Page 516.)

3. SALES OF LAND—WHEN CONTRACT NOT BINDING.—A contract for the sale or exchange of land is not binding where it was agreed that it was not to be consummated until the title was accepted and the deeds delivered. (Page 516.)

Appeal from Craighead Circuit Court, Jonesboro District; *W. J. Driver*, Judge; affirmed.

*Hawthorne & Hawthorne* and *Robert C. Powell*, of St. Louis, Mo., for appellant.

The general rule is that the purchaser must bear the loss due to an accidental injury to the property, between the time of the contract and the delivery of the deeds. The purchaser is in equity the owner, entitled to all benefits and increase in value, and must bear any loss or depreciation in the property. 85 Ark. 208; 140 S. W. 582; 32 Ark. 377; 52 Ark. 381; 66 Ark. 167; 13 Ind. 497; 14 Ind. 187; 1 S. W. 199; 4 S. W. 225; 27 L. R. A. (N. S.) 233; 22 N. E. 259; 45 N. Y. 454; 37 L. R. A. 150; 36 Am. St. Rep. 22; 12 L. R. A. 178; 26 Pa. 51; 3 Tenn. 289; 11 Ia. 360; 111 N. W. 623; 61 Pac. 926; 57 Atl. 242; 48 Atl. 85; 55 S. E. 844; 99 S. W. 1095.

*Lamb & Caraway*, for appellees.

The rule attempted to be invoked by appellant can not be invoked in this case because (1) there was no contract binding and absolute between the parties until the deeds were exchanged, July 26, and (2) the rule is applicable only in equity. 64 Ill. 477; 20 Pick. (Mass.) 134; 8 Pac. 544; Pomeroy's Equity Jur., § § 367, 368; 85 Ark. 208-211-12. But even in equity appellant would be in no better position for the reason (1) stated above. 67 Ark. 553; 64 Ill. 477; 38 N. W. 816, 818; 36 S. E. 796; 136 S. W. 843; 84 S. W. 1000; 94 Ark. 263.

HART, J. This is an action for damages for breach of a contract by appellees against appellant. There was a verdict and judgment for appellees, and the case is here on appeal.

The appellees, T. J. Ellis and Geo. C. Peters, owned a tract of land comprising four hundred and forty acres in Craighead County, Arkansas, and the appellant, T. C. Skeen, of St. Louis, Missouri, owned a town lot ninety by ninety feet in Hattiesburg, Mississippi, on which was located three small dwelling houses. T. H. Watson was a real estate agent at Jonesboro, Arkansas, and desired to bring about an exchange of the property between the parties. On May 30, 1911, appellees wrote to Watson at Jonesboro, as follows:

"Confirming our conversation with you, we hereby give you option until June 10, 1911, to purchase or sell for us all the land we own (440 acres) in section 36, township 14 north, range 2 east, Craighead County, Arkansas, at a price of $23 per acre, and agree that we will take one town lot 90x90

feet in Hattiesburg, Miss., on which is located three small dwellings. This property is now controlled by Mr. T. C. Skeen, of St. Louis, Mo., and the same is to be taken in exchange at a value of $5,000. The remainder of the purchase price of the 440 acres to be paid as follows: $2,000 cash down, and the balance in four equal semi-annual payments with interest at 6 per cent. The title to the Mississippi property must be approved by us."

On the same day F. H. Watson wrote to the appellant, T. C. Skeen, at St. Louis, as follows:

"Complying with your request, I have secured the foregoing option from the owners of the land we have under consideration (440 acres near Gilkerson) and hereby transfer the same to you with the same price, terms, etc., mentioned therein."

F. H. Watson testified: "I became acquainted with appellant about the 1st day of June, 1911. The terms of the option I received from appellees were verbally changed as follows: The appellant was to take three hundred and twenty acres of land in Craighead County, instead of four hundred and forty acres at the same price, and the appellees were to take the Mississippi property. Under the changed terms the appellant was to pay one-third of the Mississippi property in cash and execute his two notes for $786.66 each, payable one and two years after date, with interest. This agreement was reached on June 10, 1911."

Ellis and Peters executed a deed to Skeen, and sent it through the Bank of Jonesboro to Kirkwood Trust Company, at Kirkwood, Missouri, to be delivered to appellant when they so ordered. The appellant executed a deed to the Mississippi property and sent it to the Bank of Jonesboro to be delivered to Ellis and Peters upon his direction. Appellant says that he received the deed of the appellees from the Kirkwood Trust Company on July 26, 1911. The appellees received the deed from the Bank of Jonesboro on July 26, or 27, 1911. On the 21st day of July, 1911, one of the houses on the Hattiesburg property was accidentally destroyed by fire, and another one was damaged by fire. Neither of the parties took possession of the property respectively conveyed until after the delivery of the deeds. Appellees did not know of

the fire until after the deed was delivered to them. The appellant testified that he did not know of the fire before his deed was delivered by the Bank of Jonesboro. On the other hand, appellees adduced evidence tending to show that appellant did know of the fire before his deed was delivered to appellees. The court, upon the suggestion of appellees, propounded special interrogatories to the jury in regard to this. The special interrogatories and the finding of the jury are as follows:

"1. Do you find the defendant Skeen knew of the fire before his deed was delivered by Bank of Jonesboro to the plaintiffs?" Answer: "Yes."

"2. Do you find that plaintiffs, Ellis and Peters, or either of them or their agent, Watson, knew of the fire before the delivery of defendant's deed by the Bank of Jonesboro?" Answer: "No."

Numerous letters and telegrams in regard to the negotiations between the parties are copied in appellant's abstract. To set out this correspondence, here would unduly extend this opinion. Sufficient reference and discussion of the letters, telegrams and conversations between the parties and Watson will be made later.

It is contended by counsel for appellant that the rule is that where houses situated on lots under a contract of sale are accidentally destroyed by fire before the deed is delivered the loss must fall on the vendee. We do not deem it necessary to determine this question for the reason hereinafter given. The authorities on both sides of the question are cited in the case note in *Hawkes* v. *Kehoe,* 9 Am. & Eng. Ann. Cases, 1053. See also 6 Pomeroy, Equity Jurisprudence, § 859.

In a recent case we in effect held that if the parties finally agree upon all the terms of a contract and intend to become immediately bound there is a complete contract, although they intend to embody the terms of the agreement in a written instrument to be subsequently executed by them. *Friedman* v. *Schleuter, post* p. 580.

It is the settled law that a contract may be made by letters, and that the mere reference in them to a future formal contract will not prevent their constituting a binding bargain.

A written contract for the sale of land, however, is not

complete if the vendor has an option to put an end to the contract. We think the undisputed evidence shows that the parties to the contract did not intend for it to be a complete and binding contract until the deeds were delivered. All through their correspondence the parties speak of closing up the contract when they become satisfied with the abstracts of title. We do not think they proceeded upon the theory that the contract compelled them to accept the abstract of title if they should prove correct. On the contrary, they proceeded upon the understanding that they could not be compelled to take the property until they accepted the title, and that the contract was not to be consummated until the deeds were delivered to the respective parties. It is certain that the appellant did not consider the contract for the exchange of the lands to be a complete and binding one until the deeds were delivered. Each of the parties prepared his own deed and deposited it with the bank or trust company to be delivered to the other party when he should so direct.

On the 25th day of July appellant called up Watson and stated to him that the matters had not been wound up, and that he wanted to leave that night, and that before he closed up the contract he wanted to know the condition of affairs. Watson told him that there were some objections to the abstract of title of Ellis and Peters that had not been met. Appellant stated to him that he had waited about as long as he could on them, and that they were so slow he felt like calling the deal off. Watson then told him that he would personally guaranty the abstract and meet all objections. Appellant then requested him to wire him to that effect, and that he would close the transaction that day and make a payment on the land. This conversation over the telephone is not denied by appellant, and he is in no position now to claim that the contract was a binding one on the 10th day of June, 1911. It is true that the notes executed by appellant were dated June 10, 1911, but Watson states that this was done for the sake of convenience. The papers on each side were prepared at different places and at different times, and the parties only agreed upon this date so that the papers would bear a uniform date of execution. The appellant had an insurance policy on the Hattiesburg property, and by agreement transferred

this policy to the appellees, but he retained the policy in his possession, and the parties did not intend that it should become binding until the trade between them for the lands should be completed. We think it is evident from the whole course of conduct of the parties that they did not intend the contract to be completed and binding until the deeds were delivered. As above stated, certainly the appellant can not so contend, for by his own construction he had the right to call the deal off at any time before the deeds were delivered. We think that the undisputed testimony shows that both parties recognized the fact that the letters were simply an offer by the one to the other, and that the lands were to be exchanged at some time in the future when the deeds were made and delivered. Before that time came both parties recognized that the contract was not a binding and enforceable one. *Ark. Fire Ins. Co.* v. *Wilson,* 67 Ark. 553.

Consequently, the court did not err in instructing the jury that the title to the property did not pass until the date of the delivery of the deeds. Some correspondence was had between the parties themselves, and between them and the insurance company, looking to the adjustment of the loss after the fire occurred; but there is nothing in the correspondence to indicate that the parties regarded the contract as completed prior to the time of the fire. They both seem to have had in view an adjustment of the matter with the insurance company. The jury, in answer to the special interrogatories propounded to it, found that appellant knew of the fire before his deed was delivered to appellees, and that neither of appellees, nor their agent, Watson, knew of the fire before the delivery of the deed.

The verdict of the jury upon this disputed question of fact is binding on us, and establishes the liability of appellant. The judgment will be affirmed.