LITTLE v. MILLER.

4-8330                                               205 S. W. 2d 475

Opinion delivered November 17, 1947.

*Buck & Sudbury* and *Marcus Evrard,* for appellant.

*W. Leon Smith,* for appellee.

McHANEY, Justice. This is an action by appellee against appellant for specific performance of an alleged contract for the sale by appellant to appellee of certain real property in the City of Blytheville.

Appellee alleged in his complaint that appellant, on September 19, 1945, submitted to him a written offer to sell to him certain real property, in the form of a letter to him of said date; that appellee accepted the offer upon the terms and conditions set forth therein; and prayed a decree for specific performance. Certain other matters

were alleged in the complaint, but we think they are unimportant here. The letter of appellant offering to sell said property and dated as above and addressed to appellee, was attached to the complaint and is as follows: "Dear John: I have talked to you several times in regard to selling you the property that is located on lots five and six, block twenty-one, Blythe Addition. You are now renting the west half of this building from me. If you are still interested in buying this property, you can do so on the following proposition. Purchase price $22,500, down payment $7,500.

"I have a loan approved by the Jefferson Standard Life Insurance Company for $15,000, payable in quarterly payments with interest at five per cent. per annum. Interest to be figured on the balance due each time. This loan can be had on ten or twelve year time, with prepayment privilege in half time of the loan. You can take this loan over for payment of that much on the property.

"On the $7,500 down payment, you can pay me $1,500 cash and $400 a month until you pay the balance of the down payment. Checking over the Blytheville Motor Co. account with you, I find that our account will average $400 a month. If you want to it will be satisfactory to credit the motor company account each month on this balance due until you have paid the down payment. I would want you to set these payments at $400 a month and should we fail to purchase that much from you of course we would expect you to pay the difference. We can easily buy that much each month from you as long as your prices are competitive. This sale would have to be on agreement that we can occupy the east half of the building until we build. We will pay you rent in the amount of $125 per month from the time this deal is closed until we give you possession of this side of the building.

"I have definitely made up my mind to sell this property and in keeping with my promise, I am offering it to you first. Eddie B. has two other parties interested in buying it and I will appreciate you advising me upon receipt of this letter if you are interested in closing the deal

as above outlined. If you are interested, I would want to make a contract with you at this time with a reasonable cash payment and then proceed to close the deal as soon as possible.

"Please let me hear from you by return mail.

"Yours very truly, Tom Little Realty Co. By Tom A. Little."

Appellant states "that the principal question for consideration by this court to be (is) whether the letter of September 19, 1945, was intended by Mr. Little when it was written as a proposal for the sale of the property, capable of being made a contract by acceptance, or whether it was a mere invitation to negotiate the contract."

We agree with the trial court that the letter was a definite offer to sell the property to appellee upon the terms and conditions therein stated, such terms being: (1) a consideration of $22,500; (2) down payment of $7,500, of which $1,500 was to be paid in cash, and monthly payments of $400 each until the balance of the down payment, $6,000, was paid; (3) for the balance of the purchase price, $15,000, appellee was to assume and agree to pay a loan to a named life insurance company which had been approved but not actually at the time closed, and the terms of the loan are stated; and (4) that appellant could continue to occupy the east half of the building "until we build," at a monthly rental to be paid by him to appellee of $125 until appellee is given possession. Appellee was advised by this letter that he could buy the property "on the following proposition." Also that appellant had "definitely made up my mind to sell this property" and "I am offering it to you first." Also he wanted to be advised "if you (appellee) are interested in closing the deal as above outlined."

Appellee testified that, soon after receiving this letter, he went to appellant's office, tried unsuccessfully to get the price reduced, had an understanding that the heating system in the building did not go with it and then told appellant he "would take it, and we shook hands

and talked on for a while and I started to leave and he told me he would get the contract ready in a few days." In other words appellee accepted the offer as made. On December 11, 1945, appellant wrote appellee another letter reading: "Sometime ago I discussed with you selling you the building that you are now renting from me. Due to change in conditions it has been necessary for me to change my plans and I do not want to sell this property at this time.

"Should things change to where I do want to sell the property later, you can be assured that I will give you the first opportunity to purchase it."

Appellant contends for a reversal of the decree that said letter of September 19, 1945, "was intended as a mere invitation to negotiate a contract, and not as a proposal capable of being made into a contract by itself by mere acceptance." But, as we have pointed out it was not a proposal to negotiate, but was an offer to sell on certain and definite terms therein set out, and that the offer was accepted by appellee, and it is not disputed that appellee was ready, willing and able to carry out the contract. Appellant shortly after writing the letter of September 19, delivered an abstract of the title to said property to appellee's attorney for examination and approval, which said attorney did, and testified that he saw appellant several times between that time and December and asked appellant on several occasions if the $15,000 loan had been completed and was told on December 1 that it had been closed that day.

It was held in *Emerson* v. *Stevens Gro. Co.*, 95 Ark. 421, 130 S. W. 541, that "Where a contract is actually entered into, whether by correspondence or by word of mouth, the agreement becomes effective at once, although it was expected that the terms of the contract would afterwards be reduced to writing and signed." So, here, the letter of September 19, in stating in the last sentence that, "If you are interested, I would want to make a contract with you," contemplated that the parties might later make a formal contract and signed by each of them, embodying the same terms set out in said letter, or any

others that they might agree upon. But failure to draw and execute such a formal contract would not relieve appellant from performing under his written offer which had been timely accepted by appellee. To the same effect see *Friedman* v. *Schleuter,* 105 Ark. 580, 151 S. W. 696; *Skeen* v. *Ellis,* 105 Ark. 513, 152 S. W. 153.

The decree is correct and is, accordingly, affirmed.