## J B. OWSLEY ET AL vs. THE HEIRS OF HAWKINS SMITH.

A purchaser of land at a sale conducted under an order made in a proceeding in a partition, cannot avoid the payment of the purchase money upon th· gro·ind of a failure of title. Such sales are made, like those under ordinary executions, without warranty of title. The deed executed conveys the interest, whatever it may be, of the parties to the proceeding, is a bar against them, and all persons claiming under them.

### APPEAL from Marion Circuit Court.

PRATT & REDD, for appellants.

1st. Was there a failure of title? If there be no failure, then there is no misrepresentation and the question of caveat emptor cannot arise.

The deed of Moore passed no title to Douglass.

The deed from Douglass and wife to Flint is defective, and does not pass any title to certificate or land in question.

The deed from Flint and wife has the same defect.

The admission in the bill filed in Ky. by Pendergrass' heirs, that Moore was the administrator, and the decree against him does not estop said heirs from setting up their title.

The decree rendered in the suit of Smith vs. The widow and heirs of Pendergrass does not bar them from setting up their title.

2d. Where the title has failed will the court permit the pretended owners and vendees to coerce the payment of the purchase money?

The rule of *caveat emptor* is founded on the hypothesis that both parties are equally innocent; that the vendee in the absence of all misrepresentation, and relying solely on his own judgment, makes the purchase as a risking bargain. In such a case, the rule applies in equity as strictly as at law, but this rule does not apply in judicial sales for partition, for, as observed by the court in Jackson vs. Edwards, 22d Wend. 509, "that the purchaser is not bound to take a doubtful title; that it is the understanding of bidders that they are to receive a good title—such a one as the court will approve, and that the interest of both vendors and vendees requires such a rule, that property would not bring a fair value if the purchaser was bound to take a doubtful or a bad title."

3d. There was fraud and misrepresentation on the part of the defendants, in connexion with, and prior to, the purchase.

Under the law, they could not have procured a judgment for the sale, without first representing and setting out the nature of their title. Rev. Stat. 1835.

Complainant holds the rule to be, that whether defendants made the representation knowing it to be false, or not knowing whether it was true or false, is wholly immaterial; and that though they made the representation innocently, it concludes them; for it operated as a surprise and imposition on the complainant. 1st Story Eq., § 193, page 209; 1st Vernon, 136, Hobs vs. Norton; 2 Vernon, 150, Hunsden vs. Cheney; 9 Vesey, 21-23, Ainslee vs. Medlicott; 4 John. chancery reports, 543, Lawrence vs. Cornell, et al.

4th. The vendee was not guilty of any indiscretion or laches in relying on the representation—the means of knowledge are not equally open to both. The vendor has the best means of knowing his own title, and is bound in good faith to know it before he undertakes to enhance its value by representing it to be good.

### Glover & Campbell, for appellee.

1. The title exhibited by the appellees was valid in law and equity. The patent issued to Jesse Pendergrass as grantor after his death, was not void, but enured to his heirs or assignees. See act of Congress, approved May 20, 1836. The record of proceedings in the case of Hawkins Smith vs The widow, heirs and admr. of Pendergrass and others, is a complete bar to the assertion of any claim by defendant named therein to the land in dispute.

2. The appellants contend that Owsley cannot get the rights of those heirs of Smith who did not join in the petition for partition. The answer to that may be, that he did not purchase their rights; but since they have offered in their answer to convey, he can ask no more.

3. As the vendee went into possession, and refused to perform his own part of the contract, he will not be permitted to rescind, if the vendors produced a good title on the hearing of the cause.

4. That where the vendee has taken no covenants, and relies on neither fraud, accident or mistake; but relies solely on the fact, as does this man, that he paid a good price, he can be relieved, neither in law or equity. "*Caveat emptor*," is the invariable rule applied to such cases.

5. That the defendants filed their petition for partition in the circuit court averring they had a perfect title to the property is nothing to this controversy. They thought so, and so did the court; but opinions addressed to the party to the contract have no weight on the question before us, nor can they when addressed to third persons.

6. That the appellants bill should have been dismissed for his iniquitous conduct at the biddings; and for his interference to prevent the defendants from clearing what was supposed to be difficulties in the title.

7. The appellants make an objection to a form of a portion of the proceedings upon which an opinion is respectfully desired of the court, though it should not be absolutely necessary to the decision of the cause—it is this : The defendants in the court below being sued for want of title, and having the right under the circumstances of the case to perfect their title if they could, and to compel the plaintiffs to wait until it was perfected, made the answer a cross bill against the persons alleged by plaintiffs to have claims upon the lands in the decree. The plaintiffs, without questioning the right of defendants to do this in a seperate suit, and to de- lay the plaintiff's bill till it can be done, object to the form of the proceeding, say it is not technically a cross-bill, and that therefore it cannot be done. We contend that the jurisdiction of the court being undoubted, the 'form' is within the discretion of the court.

NAPTON, J., delivered the opinion of the court.

This was a proceeding to obtain an injunction against a judgment at law rendered against the complainants. The judgment sought to be enjoined, had been obtained upon a bond given by Owsley, and his securities for the last installment of the purchase money of a tract of land sold by the sheriff under an order of court. This sale was the result of proceedings for a partition between the heirs of Hawkins Smith.

The ground upon which the complainants asked the interposition of the court was, that the title to a portion of the land was not valid.

A demurrer was filed, but was overruled. After the answer was filed and a cross-bill put in, various proceedings were had with a view to perfect the title before the hearing, and this having been acomplished in the opinion of the chancellor, the bill was dismissed, and damages awarded.

We shall not enter into any investigation of the merits of the title, which constituted the only ground of dispute in the circuit court. Such an enquiry would be useless in the view we have taken of the character of these sales under the partition law of this State.

It was not the intention of the legislature, to make the parties to a proceeding in partition, responsible for the title, where it was directed to be sold. The whole object of this statute is to enable parties who have an undivided interest in lands, to divide that interest, whatever it may be. When a sale is made, no warranty attends the sale, nor is any authorized. The sheriff is required to sell, as in case of ordinary exe-

cutions at law.   It is well understood by all parties, purchasers and others, that the purchaser under an execution buys the title of the judgment debtor, and nothing more.   And so in proceedings under our partition law, the conveyance which the sheriff is authorized to make, is declared to be a bar, both in law and equity, against all persons interested who have been parties to the proceeding, or who claim under the parties.   There is no further warranty than this, and sound policy requires there should be none.

The act makes ample provision for an investigation of the title.   If any person other than the petitioners or defendants, claims any interest, he can be made a party, and his claims be adjudicated.   The petition must set out the rights of the parties, as far as they are known, and the court has full power to investigate the matter.

To permit a purchaser to come in after the close of these proceedings, and set up a title in some one who has never and may never assert it himself, with a view to avoid the payment of the purchase money, would be productive of great mischief.   The records of the court show the title, as known to the parties, and its value may be as easily ascertained by the purchaser as in any other case of execution sales. In the present case the complainant states in his bill, that Hawkins Smith, in the year 1823, instituted a proceeding to perfect his title, and alleges that this proceeding was fruitless.   This proceeding, whatever may have been its value, was spread upon the records of the country, and was open to public investigation.   The purchaser was as competent to determine its efficiency as the heirs of Hawkins Smith.

Undoubtedly the courts will not permit a fraud to be committed. If the parties whose interests are ordered to be sold are guilty of any fraudulent concealment or misrepresentation, or choose voluntarily to guaranty the title, the purchaser at the sheriff's sale would occupy a different position from the present complainants.   There is no pretence of fraud here, except that the petition represented Hawkins Smith to have died seized in fee simple of the land sold, and this is alleged not to be true. Hawkins Smith had purchased the New Madrid certificate by virtue of which this land was located, and had occupied the land nearly thirty years, claiming it as his own.   It is now said that the purchase was unavailing, and the title of Pendergrass (from whose administrator Smith claimed) still remains in his heirs.   The petition of Smith's heirs may have been, in this respect insufficient, but such an imperfect statement of the title, is no evidence of fraud, or of the slightest misrepresentation.   The title was doubtless believed to be good, and at all events, the complainants had as good an opportunity of investigating

it as the heirs of Smith. It is not to be presumed that a purchaser of a tract of land will attend a sale of this description, without a proper examination of the title as well as the land itself. The records of the county are open to the inspection of all, and upon these records every objection now urged to this title was to be found. The purchaser is supposed to be acquainted with the law under which the sale is made; and must therefore know that he is buying the title of the heirs, which is all that the sheriff is authorized to sell—and that he buys this title with no warranty except against them, and those claiming under them.

Decree affirmed.