PATRICK H. CLARKE, Sheriff, Respondent, v. GEORGE N. COOPER, Appellant.

St. Louis Court of Appeals. Argued and Submitted April 6, 1910. Opinion Filed April 19, 1910.

1. **APPELLATE PRACTICE: Change of Parties.** Where one as sheriff brought an action and pending the proceedings his successor in office was substituted in his place, the title of the cause should be changed accordingly in the appellate court.

2. **JUDICIAL SALES: Title of Purchaser.** In the absence of fraud, surprise, or misunderstanding, the purchaser at an execution sale takes the title sold, at his peril.

3. ————: **Advertisements: Description of Premises: Corner Lot.** A statement in an advertisement for the sale of a lot under an execution that it was a corner lot was no part of the description.

4. **NOTICE: Constructive Notice.** One has no right to shut his eyes to facts easily ascertainable and then claim to escape the consequences, nor has one the right, knowing the facts or having every opportunity to know them, to accept from another a misstatement and then claim the benefit of it.

5. **JUDICIAL SALES: Notice of Sale: Description of Property: Mis-Recital in Advertisement: Corner Lot.** The advertisement of a lot sold at execution sale stated that it was a corner lot on Grundy street, and the deed tendered the purchaser conformed to the levy and advertisement, but the lot was not in fact a corner lot. There was a point on a certain survey of the subdivision which was designated Grundy street, and it could have easily been determined by slight investigation whether the street was opened or dedicated, and the lot could have been located. The purchaser lived within five or six blocks of the lot, and was familiar with the neighborhood, and had passed the lot, but claimed that he relied upon the statement in the advertisement that it was a corner lot, and was misled thereby into bidding a higher price than it was worth as a non-corner lot. *Held*, that the purchaser could not rely on the misstatement in the advertisement and deed that the lot was a corner lot to avoid the sale or justify his refusal to accept the lot.

6. ————: **Mistake of Purchaser as to Value.** A failure or mistake in value of the thing purchased at a judicial sale is not ground for setting the sale aside.

7. **SALES: Mistake of Vendee as to Value.** A mistake in value of the ·thing purchased is rarely · a ground for setting aside any sale, except where there is positive proof of fraud or deception by which the vendee was induced to give a larger price for the article purchased than it was worth, or where the imposition in value is so great as to shock the conscience.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*Albert C. Davis* for appellant.

(1) The doctrine of *caveat emptor* does not apply to the case at bar. McLean v. Martin, 45 Mo. 393; Wilchinsky v. Cavender, 72 Mo. 192; 25 Am. and Eng. Ency. Law (2 Ed.), p. 844, note d. (2) If a careful purchaser has been led into mistake by the conduct of the seller, the court should not hold the sale void. Owsley v. Smith's Heirs, 14 Mo. 153; Swartz v. Dryden, 25 Mo. 572; 24 Cyc. 41. (3) The court refused to relieve appellant from his bid even if the court found from the evidence that appellant was misled by the advertisement of the sheriff and was damaged by the mistake. This was error. Cases cited under point 1.

*Zachritz & Bass* for respondent.

(1) Revised Statutes 1899, p. 799, sections 3202 and 3203, "provide that if a bidder at an execution sale refuses to pay the amount of his bid for property struck off to him, the officer making the sale may again sell to the highest bidder, as though no previous sale had occurred, and, if loss results, the amount of such loss may be recovered on motion before a court or justice in a summary way." (2) The purchaser at an execution sale buys at his peril, and must beware of his title, and cannot be excused from answering any damages for refusing to complete the purchase bcause the property was incumbent by easement, or because at

the second sale, the officer making it expressly notified bidders of the easement. McNamee v. Cole, 114 S. W. R. 46.

REYNOLDS, P. J.—The respondent in this case, at the time sheriff of the city of St. Louis, having in hand a pluries writ of execution, issued out of the circuit court of the city of St. Louis, levied upon the right, title, claim, interest, estate and property of one Green, defendant in the execution, describing the property as follows: "A lot of land situated in the city of St. Louis, in the State of Missouri, and in block 2924 of said city, having a front of sixty (60') feet and six (6") inches on the west line of Minnesota avenue by a depth westwardly between parallel lines of 147 feet and 11 inches; bounded north by Grundy street, south by land now or formerly owned by Mary O. Cummisky and trustee, east by Minnesota avenue and west by a line parallel to Minnesota avenue." This is in that part of the city formerly called Eiler's Subdivision of Carondelet. Legal notice of the sale being published, one Cooper, appellant here, bid off the property for the sum of $300. The sheriff executed a deed to Cooper for the property, described it as in the advertisement and levy as above and tendered it to the appellant, who refused to receive the deed or to pay the amount bid for the property. Whereupon the sheriff re-advertised the property under the same description, as we understand, as in the first advertisement, and sold it to one Hereford, at the price and sum of thirty-five dollars. Subsequently the sheriff, proceeding under the provisions of section 3202, Revised Statutes 1899, moved the court for a judgment against Cooper for the difference between the amount of the bid, to-wit, $300, which had been made by Cooper, and the amount bid by Hereford, to-wit, $35, making a loss of $265, also demanding the cost of advertising the second sale which amounted to $56. Cooper answered, admitting that he had made the bid of $300, admitting that the lot was

struck off to him and that the sheriff had tendered him a deed conforming to the levy and advertisement, but averring that the description contained in the advertisement made the lot a corner lot and that according to that advertisement it was situated on the southwest corner of Minnesota avenue and Grundy street, and that it was announced at the sale by the deputy sheriff, who cried it, that the lot was on the southwest corner of Minnesota avenue and Grundy street and that he (Cooper) bid upon the property believing that fact to be true, whereas in truth and in fact, as he claims in his answer, it was not a corner lot, was not bounded on the north by Grundy street; that there is no Grundy street, or any other street bounding the lot on its northern line, and that if the lot had been a corner lot it would have been of a much greater value than is the lot in its actual location.

At the proceeding under the motion, the present sheriff, Mr. Nolte, was substituted in place of Mr. Clarke, but the title of the case has not been changed in this court, as it should have been. Appellant in support of his claim, introduced as a witness a Mr. Ryan, who testified that he was a title examiner in the city of St. Louis. Mr. Ryan was asked if he had heard the description of the property read as it is described in the petition in the case, and he said he had. He was asked if he had examined the title to that property and he answered that he had. Asked if he had made a special examination as to this piece of property with reference to whether there is any Grundy street on the north of it, he testified that he had examined through the ordinary channels of a title examiner, and that there is represented on the plats in the special tax department a street called Grundy street but that the property covered by this street is assessed in the names of individuals; that he found no formal dedication or opening of Grundy street of record. Asked if there was anything upon the record to show that there ever was contemplated to lay out

a Grundy street there, he answered: "There was something on the records to show there was evidently at one time contemplated Grundy street," but according to the surveys laid out by Eiler, who laid off the subdivision in which the lot is situated, the street is represented as being closed owing to the fact that the block "didn't have sufficient width;" found nothing on the record to show that it had ever been opened. On cross-examination he stated that he couldn't say from an examination in the special tax department, of the plats there on file, that they show a street; that Grundy street is represented on these plats as thirty-six feet wide, not represented exactly as a street, but there is written on the plat at that place, "Grundy street, thirty-six feet," but there are no dotted lines, and so far as his examination went, he found no dedication of it but that the records do show that sometime back it had been contemplated putting a street through there to be called Grundy street; that there was a survey of the town of Carondelet by Eiler, in 1832, wherein it states that " 'G' street is entirely shut up owing to the circumstance that there was not sufficient ground for the blocks, for these streets to maintain their proper width," 38 feet, English measure. This was all the evidence introduced by the appellant in chief, who under the ruling of the court had the affirmative and was given the opening and closing of the case. Respondent then called the deputy sheriff who had made the sale; he testified to the fact of making the sale and that Mr. Cooper was the bidder for $300, and the deed was tendered him properly executed, and Mr. Cooper refused to pay the $300; that the property was re-advertised and at the second sale sold for $35 to Mr. Hereford, who was the highest bidder, and that the additional costs were $56. The execution was offered, it being admitted that the sheriff had acted under a good and valid execution, as pleaded. Respondent here rested and appellant in rebuttal was examined as a witness on his own behalf and testified that he was a real estate agent; had been

in that business for about eight years; had bid $300 on this property; had read the advertisement and that had stated it was a corner lot and he supposed it to be such. If it had been a corner lot it was worth twenty dollars a foot but as an inside lot he would not consider it worth more than eight dollars a foot. On cross-examination he stated that he had read the description in the advertisement before he made the bid; read it the same day; called at the sheriff's office on the morning of the day of the sale at about 9 o'clock; made some inquiries about the lot and then came back at noon time and bid the lot in at the sale. Asked if he had ever visited the premises, or ever sent down to inquire or to see whether or not it was a corner lot, he answered that he was familiar with the property down there himself, living in that neighborhood, and within five or six blocks of this property and knew the property from having passed it occasionally and knew just where it was and what it was; knew that before he made the bid. He said, however, "but from the 'ad' I judged it would be a corner lot; if it was bounded by two streets it would naturally be a corner lot." Asked by the court if he was familiar with the neighborhood, appellant said he was; did not know whether or not Grundy street existed; it might be a street and not be traveled, might be a street of record. The court then said to him, "But as you were familiar with this neighborhood and the property in the neighborhood, how did it happen you didn't know there was no such street?" Appellant answered, "The street is blocked by the next street west; there was no way of driving through, but as it (the advertisement) states it, it is bounded by a street and I thought the street was there and could be opened." In answer to questions of counsel for respondent, the appellant stated that this Grundy street is blocked on the east by Michigan avenue, which is the next street west of Minnesota avenue and one block west of it. He was then asked by

the court this question: "Omitting the reference to Grundy street, how would the description stand?" He answered, "It is bounded north by a private party instead of being bounded north by a private street; it is a lot in the middle of the block." Counsel for respondent, resuming his cross-examination, asked appellant if it was not a fact that it was bounded on the east by Minnesota avenue, on the south by land now or formerly owned by Mary Cummisky, on the west by a line parallel to Minnesota avenue. He answered that that was true and that the dimensions of the property are properly given. This was all the evidence in the case. Whereupon the appellant asked the court to declare the law as follows:

"If the court finds from the evidence that the sheriff levied and advertised the execution sale upon the property described in the petition as a corner lot and that the defendant bid upon said property under the mistaken belief that said lot was a corner lot and that said lot was not a corner lot and that defendant was misled by said advertisement of the sheriff and that said property is of much less value than it would be if it was a corner lot, and that defendant would suffer injury by reason thereof, the judgment will be for the defendant."

The court refused this declaration of law and finding for respondent, entered up a judgment against appellant for $321 and costs of the motion. Appellant filing his motion for a new trial and that being overruled afterwards filed his bill of exceptions and brought the case here on appeal, saving exception to the refusal of the declaration of law asked and overruling of the motion for a new trial.

The learned circuit judge filed a memorandum of his conclusions which is embodied in the record, having been preserved by the bill of exceptions. That finding gives a very clear idea of his views. We cannot do any better than quote extracts from it. After reciting the issues the judge states that under the statute judg-

ment must be given in favor of the sheriff for the loss occasioned by the resale, unless the defense interposed by appellant Cooper should be held sufficient, citing as to the measure of damage the case of McNamee v. Cole, 134 Mo. App. 266, 114 S. W. 46. The court continues:

"It is admitted that the property is accurately described in the advertisement by virtue of which it was sold to defendant, but the recital therein that the property was a corner lot on Grundy street was erroneous.

"Defendant testified that he knew the property, had seen it, and knew the neighborhood where the property was located, and at the time of the sale he was residing not far from where the property was situated and that he passed the property in question frequently. Therefore, it appears that he was not a stranger to the property and its location. From personal inspection he could have learned the boundaries of the property, and also whether such a street as Grundy street in fact existed.

"The question then arises, was Cooper justified in relying on the erroneous recital in the advertisement that the property was a corner lot, and for this reason more valuable, rather than on his own knowledge touching the precise location of the property. If he had possessed no other information at the time of his bid concerning the situation of the property than what he derived from the advertisement, defendant's claim that he was misled would have had a stronger basis to support it.

"It is not unreasonable to conclude that defendant did to some extent rely on his own knowledge of the property. Indeed, the circumstances which appear in evidence require him to do so. However, in this proceeding his position appears to be that he insists that he was justified in relying solely on the advertisement in its statement that the property was a corner lot. He says that had he known at the time of his bid that the

property was not a corner lot he would not have bid on it, and that as soon as he learned this fact he declined to take the property.

"In the absence of fraud, surprise or misunderstanding, the general rule is that the purchaser buys at his peril and must beware of his title. The facts in this case are not sufficient to support a claim of fraud. If the defendant was misled or surprised it resulted from his own fault. The property was correctly described and the title was good. The statement that it was a corner lot was no part of the description.

"The recent case of the St. Louis Court of Appeals, McNamee v. Cole, 134 Mo. App. 266, 114 S. W. 46, applies the general rule that at execution sales the purchaser buys at his peril and must beware of his title and cannot be excused from responding in damages because the property was encumbered by easements.

"The defense in the case at bar cannot be sustained."

In addition to what is so well said by the learned circuit judge, both as to the facts in the case and as to the principles governing it, with all of which we agree, we refer to the decision of our Supreme Court in Owsley et al. v. The Heirs of Smith, 14 Mo. 153, where Judge NAPTON, delivering the opinion of the court, at page 153, says: "It is not to be presumed that a purchaser of a tract of land will attend a sale of this description, without a proper examination of the title as well as the land itself. The records of the county are open to the inspection of all, and upon these records every objection now urged to this title was to be found." The learned counsel for appellant refers us to Schwartz v. Dryden, 25 Mo. 572, as well as to Cyc., vol. 24, p. 41, and 25 Am. and Eng. Ency. of Law (2 Ed.), p. 844, noted and also to the cases of McLean v. Martin, 45 Mo. 393, and Wilchinsky v. Cavender, 72 Mo. 192, as authority for the

propositions upon which he now relies, namely, that the doctrine of *caveat emptor* does not apply to the case at bar, and that if a careful purchaser has been led into mistake by the conduct of the seller, the court should hold the sale void; it being further contended by that counsel that the court committed error in refusing to relieve appellant from his bid if it found from the evidence, as it must have done, that appellant was misled by the advertisement of the sheriff and damaged by the mistake. These authorities do not meet the facts in this case. It is laid down in the Cyclopedia, at the paragraph referred to, that a judicial sale may be set aside where there has been a mistake or some surprise in connection with the sale, resulting in injury. The American & English Encyclopedia is to the same effect. An examination of some of the cases referred to in these works hardly sustains counsel in his petition. Thus in the case of Hayes v. Stiger, 29 N. J. Eq. 196, one of the cases referred to in the footnote to 24 Cyc., p. 41, it is held that when the mistake of fact is the result of the purchaser's own negligence, even a court of equity will not relieve him. In the case of Mechanics' Savings & Building Loan Assn. v. O'Conner, 29 Ohio St. 651, another case referred to in the notes in the Cyclopedia, it appears that the commissioner who made the sale and the bidder at the sale supposed the lots offered at the commissioner's sale were dry. It developed that they were wet and subject to overflow. The Supreme Court of Ohio said, in deciding the case, that it was true the defendant who had purchased at the commissioner's sale, did not buy such lots as he supposed he was buying; that it may be true that the commissioner, or plaintiff in the suit at whose instance the sale was made, also believed that the lots offered for sale were dry. "This however," says the court, "does not make such a case of mutual mistake as vitiated the contract. The mistake was simply as to the character or quality of the lots. The sale was a judicial one, and the purchaser was

charged with the duty of ascertaining for himself the character and condition of the property. This it failed to do, and for such neglect, it stands as though it had full knowledge in the premises."

The case of McLean v. Martin, supra, which the circuit court in the case at bar held did not apply in its facts, was a case where there had been such a misdescription of the property sold at the judicial sale that the purchaser acquired nothing whatever. The advertisement told him he was buying the northeast quarter and that that was the property of the defendant in execution, whereas in point of fact the defendant in the execution owned and lived upon the northwest quarter and the purchaser at the sale received nothing whatever for the money which he bid and paid out and which went to the benefit of the defendant in the execution. The latter lost nothing and received credit for that to which he was not entitled. The court held that under these circumstances he was bound to pay back the money.

The facts in the Wilchinsky case, supra, are not fully set out, but that decision rests on the McLean case, Judge NAPTON, who delivered the opinion in both cases, saying that it had been held in the McLean case that the doctrine of *caveat emptor* had no application where a mistake was made both by the sheriff and the purchaser in selling a tract of land to which the defendant in the execution had no title and that the consideration for the money paid on the execution having failed and the money paid in on the sale having gone to extinguish the judgment against defendant, plaintiff was entitled to recover it back from the defendant in the execution. It will be seen that neither of these cases meets the case at bar.

Schwartz v. Dryden, supra, relied on by the learned counsel for the appellant, strikes us as directly opposed to that counsel's position. Quoting merely the syllabus of the case, which is a correct statement of the case itself, it announces as the law applicable to judicial sales, first,

Clarke v. Cooper.

that there is no warranty of title, even in sales in partition proceedings; secondly, that where the parties to a statutory proceeding for partition "have no title to a portion of the land, a purchaser, at the partition sale, of such portion—there being no fraud or misrepresentation—will not be entitled to have such sale set aside as to such portion on the ground of this want of title." That is not this case, for several reasons: First, the description in the deed was not such a misdescription as would have voided the title to the lot sold if the defendant had chosen to accept the sheriff's deed. The test of that would have arisen if there had been possession of the lot in question by some one claiming right to possession adverse to the purchaser at the sheriff's sale and who had resisted the entry of the purchaser, the latter claiming under the deed from the sheriff. Could it be successfully contended that there was such a misdescription of the lot as to have made the deed that the sheriff had given to the purchaser unavailable by reason of a misdescription of the property? Clearly not. Even defendant's witness, the title examiner, testified that he located the lot from the description in the petition, which followed that given by the sheriff. Again, appellant was not a "careful purchaser." A man has no right to shut his eyes to facts easily ascertainable and then claim to escape the consequences. Nor has he the right, knowing the facts himself or having every opportunity to know them, to accept from another, a misstatement, knowing or having an opportunity to know, that it was a misstatement and then claim the benefit of that misstatement. He cannot hold the other responsible for the effect of the misstatement, when his own knowledge told him it was a misstatement. One cannot shut his eyes to facts that he knows and then hold him who has innocently erred, responsible for error. Nor can he, going into an enterprise with his eyes shut to

what he has seen and what his eyesight had shown him, draw out of it because it so happens that the party who invited him into it did not have the same information that he had and hence had made a misstatement as to the facts in the case. There is no pretense that the sheriff knowingly or fraudulently made any misstatement. Nor are we satisfied, from the evidence in this case, that there is no Grundy street. Whether such a street has been opened or dedicated or exists, it is very clear that there was a point on the plat of Eiler's survey of Carondelet which was marked and designated by the name of Grundy street; whether it was an open street or not could have been determined by anyone making the slightest search. Nor would they have had any trouble whatever in determining whether it had been dedicated as a street or in locating this particular lot. After all, when you come to the ultimate fact in the case, it appears to us that the defendant's proposition rests on a failure in value in the article he bought. That is no ground whatever for setting aside a judicial sale; in fact, it is rarely a ground for setting aside any kind of a sale, save in the presence of most positive proof of some fraud or deception by which a party was induced to give a larger price for an article than on any possible hypothesis that article was worth, or where the imposition in value is so great as to shock the conscience. On consideration of the facts and the law applicable to this case, we hold that the judgment of the circuit court was right and it is affirmed. All concur.