In the matter of the Real Estate of PETER J. DONAGHY, deceased.

*New Castle, Aug.* 3, 1911.

Definition of a "marketable" title.

The administrator at a sale of real estate represented that the title to the land was "good and marketable" and the purchaser refused to take it.   The paper title back to a conveyance made by one H. of the land in 1856 was good, and the grantee of H. and those claiming under him, had exclusive and undisturbed possession.   The only evidence of ownership of H. was a deed to her made in 1819 for an undivided one-eighth share of the land.   *Held*, that the title was good and marketable and that the validity of it did not depend on proof of any material fact extrinsic the records.

A vendee will not be compelled to accept a title by adverse possession upon the mere fact of uninterrupted possession for twenty years and the burden is upon the vendor to show that the legal owners during that period were not under such disability as would prevent the statute of limitations from running against them.

A vendee will not be compelled to take a title, though it be in fact good, if it is subject to reasonable doubt, depending upon the ascertainment of some material fact, extrinsic to the record title, to be found by a jury when the question arises.

The doctrine of *caveat emptor* should apply in sales under order of the Orphans' Court; and the practice of imposing conditions on the estate, such as representations concerning the title should be discontinued.

OBJECTIONS TO CONFIRMATION OF SALE.   The administratrices of Peter J. Donaghy, deceased, having sold certain real estate of the deceased for the payment of debts, under an order of the Orphans' Court, made return thereof, and asked that the amount deposited by the purchaser be declared forfeited for failure of the purchaser to pay the balance of the purchase money within the time limited in the conditions of sale.   To this return the purchaser filed an answer alleging that the title was not good and marketable, as it was represented to be by counsel for the admininstratrices at the time of the sale, and hearing was had on said return of sale and answer. The facts appear in the opinion.

Argued before CURTIS, Ch., and RICE, J.

*Charles F. Curley* and *Samuel S. Adams, Jr.*, for administratrices.

*William T. Lyniam*, for purchaser.

RICE, J. (delivering opinion of the Court): Annie Fitzharris and Margaret Kane, administratrices of the estate of Peter J. Donaghy, deceased, pursuant to an order of the Orphans' Court in and for New Castle County, for the sale of land to pay debts, exposed for sale lands and premises situate in Christiana Hundred.   The sale was held on Saturday, April 1st, 1911, and at that time the attorney representing the estate stated "the title to be good and marketable, or would be made good and marketable at the expense of the estate, or forfeit money to be returned."   On the seventh day of April the administratrices filed in this Court a return of said sale, setting

forth that lot number one in the order of sale had been sold to James P. Conway and that he at the time deposited $400, as required by the conditions of sale; that the said J mes P. Conway has refused to accept a deed from the administratrices for the property and to pay the balance of said purchase price, payable according to the conditions of sale at the return day of the same, for the resaon alleged by him that the title to the same is not a "good marketable title." The administratrices claim that the title to said property is a "good and marketable one," etc. To this return the purchaser filed an answer on July 19th. The answer, among other things, stated that, relying upon the representations concerning a marketable title, he became a bidder at the sale. The property was sold to him for $4,000, and he paid $400 as deposit, and promptly had made an examination of the title, which examination disclosed the following state of facts:

"That the title by which the said Peter J. Donaghy, in his lifetime, and at the time of his death, purported to be seised in fee simple of , in and to the said farm and tract of land, is derived through certain conveyances and assurances in the law, among which is a certain deed of Ann Hutchinson to Jeremiah Springer, bearing date the eigth day of September, A. D. 1856, and recorded in Deed Record Y, *vol.* 6, *page* 72, etc.; that the only conveyance of record in New Castle County to the said Ann Hutchinson, the grantor, in the said last mentioned deed, is a certain deed made by John Hutchinson, on the eighteenth day of October, A. D. 1819, recorded in Deed Record X, *vol.* 3, *page* 225; that said deed purports to convey to the said Ann Hutchinson a one-eighth interest in certain lands in Christiana Hundred, this County and State, but whether the said lands and premises purchased by him at the said sale are a part of the lands and premises described in the last mentioned deed he is unable to say; that whether or not the said Ann Hutchinson ever acquired the remaining seven-eighths interest in the lands conveyed by deed recorded in Deed Record X, *vol.* 3, *page* 225, and if so, how, the land records of New Castle County do not disclose; that by reason of this fact the title to the said lands purchased by him as aforesaid is not a good and marketable title, nor has the same been made good and marketable; he tenders himself ready to accept a deed for the said lands and premises and pay the balance of the purchase money as soon as the title to the same is made good and marketable."

It is admitted by the counsel for the purchaser that the paper title back to the conveyance by Ann Hutchinson on Sep-

tember 8th, 1856, is a good one with the degree of certainty usually attached to descriptions of farm land, and he urges as his only reason for the title not being a good and marketable one, the fact that it does not appear from the land records of this County how Ann Hutchinson took title, and, therefore, he should not be compelled to take the lands and premises.   In support of his contention he cites in his brief certain cases, including *Carolan v. Yoran*, 104 *App. Div.* 488, 491, 93 *N. Y. Supp.* 935, and *Ruess v. Ewen*, 34 *App. Div.* 484, 487, 54 *N. Y. Supp.* 357.   In the first case the main point raised was as to the validity of a certain deed, but the defendant also contended that they had a good title by adverse possession under a deed dated December 31st, 1873.   Ingraham, J., in delivering the opinion of the Court, said:

"There is no evidence as to whether Eliza M. Stevenson was alive, whether she had died, leaving issue, or whether she or any of her descendants were under any disability that would prevent the statute of limitations from running against them.   It is now established that a vendee will not be compelled to accept a title by adverse possession upon the mere fact of uninterrupted possession of the premises for over twenty years; that the burden is at least upon the vendor to show that the legal owners of the property during that period were not under a disability so that the statute of limitations would run against them.   Upon the whole case I do not think that was a marketable title and for that reason the plaintiff was entitled to recover."

The learned justice is unquestionably right in saying that "a vendee will not be compelled to accept a title by adverse possession upon the mere fact of uninterrupted possession of the premises for over twenty years; that the burden is at least upon the vendor to show that the legal owners of the property during that period were not under a disability so that the statute of limitations would run against them," for it is well recognized that elements other than uninterrupted possession enter into securing a title by adverse possession.   The law, as stated, had particular application to the facts in that case, where the adverse possession was founded on a faulty acknowledgment to a deed  which, under the facts, might not have operated against the true owner, but we cannot see how it has any bearing in this case, for there is no statement of fact to show that

there is an invalid deed, or that Ann Hutchinson at the time of
the conveyance in 1856 was not the owner of the 'and and prem-
ises, other than the statement that there is no land record to
show how she acquired title.    In the second case, the case of
*Ruess v. Ewen, supra*, McLaughlin, J., in delivering the opinion
of the Court, said:

> "And although the title tendered may in fact be good, yet it it is sub-
> ject to reasonable doubt, depending upon the ascertainment of some
> material fact extrinsic to the record title to be found by a jury when the
> question arises the purchaser in general will not be required to complete
> the purchase."

We believe that that case differs from the one before us,
for we can find nothing in the answer of the purchaser that
would raise a reasonable doubt as to the title, which would
require the proof of some material fact outside the record.    The
other cases cited by the purchaser, we believe, either are like
the cases above, or differ materially in facts from the facts of
this case.    The question before us is whether the title to the
land and premises sold by order of this Court is a good and
marketable one, according to the facts set forth in the return
of sale and the answer filed to that return by the purchaser.
In *Cyclopedia of Law and Procedure, vol.* 26, *page* 819, upon the
authority of cases there cited, a marketable title is defined to
be "a title which a reasonable purchaser, well informed as to
the facts and their legal bearings, willing and anxious to per-
form his contract, would, in the exercise of that prudence which
business men ordinarily bring to bear on such transactions, be
willing and ought to accept," and "a title reasonably free from
such doubts as would affect the market value of the estate;
one which a prudent man with knowledge of all the facts and
their legal bearings would be willing to accept."

As stated before, it is admitted by the counsel for the
purchaser that the paper title back to 1856 is a good one.    It
appeared that the grantee under the deed of 1856 and those
claiming under him have been in exclusive and undisputed
possession of the land and premises conveyed by that deed and
that until now no one, either a claimant, owner or any other
person, has questioned Ann Hutchinson's right to convey the

land and premises in question.    We believe the presumption that she was the owner at that time is so strongly in favor of the right that there could be no reasonable doubt at this late date of the fact that she was the owner at the time of the conveyance, and that this fact does not depend upon the proof of any material fact extrinsic to the record.    We, therefore, are of the opinion that the title to the lands and premises sold under the order of the Orphans' Court is a good and marketable one, and we will make an order that the purchaser pay the balance of the purchase money and take title, or that the $400 paid by him as a deposit be forfeited.

We also desire to say that the doctrine of *caveat emptor* should apply in sales made under order of the Orphans' Court, and that the practice of imposing other conditions on the estate, such as representations concerning title, is not a good one and should be discontinued.

Let an order be entered accord'ngly.