Charles B. Holladay, Petitioner,

*vs.*

Aimee G. Flinn, Maria G. Morrow, and John Biggs, Jr., and Philip L. Garrett, Trustees.

*New Castle, Dec.* 11, 1929.

RICE, J., sitting.

*James I. Boyce*, for petitioner.

*Reuben Satterthwaite*, for respondents.

RICE, J. On the eleventh day of January, 1928, Aimee G. Flinn, Rose Luke Nelson, William G. Luke, Charles W. Luke and Ruth Green filed a petition in the Orphans' Court of this County, praying for the partition of certain lands owned by the petitioners as tenants in common with Maria G. Morrow and Security Trust Company, Trustee under the Will of Mary G. Studebaker. Summons was ordered, issued and served upon Maria G. Morrow and Security Trust Company, Trustee. The lands to be partitioned were the lands of which Susan Green died seised, and were described by metes and bounds in the petition. The persons named as petitioners and respondents in the proceeding were heirs-at-law of Susan Green, deceased.

Upon the return of the service, it appearing that a partition of the lands and premises would be detrimental to the interests of the parties entitled and no cause having been shown why the lands and premises should not be sold, the court appointed John Biggs, Jr., and Philip L. Garrett as trustees to make the sale. In the order of sale, upon the request of the petitioners and with no objection from the respondents, or their counsel, the court ordered, among other things, the following:

"1. That the portion of the said estate lying upon the north side of Kennett Pike, now consisting of the lumber yard, office, plant and environs

of Green and Flinn, Inc., shall first be offered at public auction and that the said premises shall be sold to the highest and best bidder therefor, subject, however, to the confirmation of this Court as hereinafter set out.

"2. That the rest, residue and remainder of the said premises shall be sold at public auction to the best and highest bidder therefor, subject, however, to the confirmation of this Court as hereinafter set out.

"3. That the whole of said premises consisting of the two parcels of the said premises set out in 1 and 2 hereof shall be offered at said public auction and that the same shall be sold to the highest and best bidder therefor, subject, etc.

"That the said trustees shall recommend to this Court that that sale shall be confirmed by the said Court which shall bring to the said trustees the highest and best price obtainable for the said premises from the sale in two parts as set out heretofore, or as a whole."

In the advertisements of sale the property was described by metes and bounds as the same appeared in the petition filed and also as described or set forth in the order of sale. A copy of the advertisement was sent to each person having an interest in the property.

The trustees, in their return, set forth that Charles B. Holladay was the highest bidder at the sale and that the property, when sold as a whole, brought a higher price than when offered in two portions. The court confirmed the sale of the property as a whole to Charles B. Holladay.

Subsequent to the confirmation of the sale, and before the trustees executed and delivered a deed to the purchaser, Holladay had the premises surveyed. As a result of the survey, it was discovered that a small triangular tract of land upon which a part of the plant of Green and Flinn, Inc., was erected was not included in the land described by metes and bounds in the petition filed. The land not included adjoins the lands described in the petition and was also real estate of which Susan Green died seised. The parties to the partition proceeding other than Aimee G. Flinn and Maria G. Morrow voluntarily executed and delivered a deed to Holladay for that portion of the land not included in the description of the property by metes and bounds. Aimee G. Flinn was one of the original petitioners.

Charles B. Holladay, on the 9th day of January, 1929, filed a petition praying that a rule issue out of this court directed to

all the parties named in the partition proceedings and against John Biggs, Jr., and Philip L. Garrett, trustees, requiring them to show cause, if any they had, why the said trustees should not execute and deliver to the petitioner a deed conveying to him all of the lands late of Susan Green, deceased, and more particular all that portion thereof lying upon the north side of the Kennett Pike now consisting of the lumber yard, office, plant and environs of Green and Flinn, Inc.

The rule was directed to be issued by the court and was served upon the respondents.

Philip L. Garrett, one of the trustees appointed by the court to make the sale, in part answered as follows:

"1. That Charles B. Holladay does not seek to remedy an error in description, but endeavors to have an additional tract of land included in the deed to be made by him by the trustees other than that described by metes and bounds in the partition proceedings; that while Susan Green died seised of both parcels of land, yet they were purchased separately.

"2. That this trustee believes that the property when sold was bid in by one Daniel Cauffiel, who bought the same for himself and not for Charles B. Holladay, the petitioner, and that afterwards Cauffiel sold the same to Charles B. Holladay, at an advance over what Cauffiel had bid at the public sale.

"3. That this trustee believes that Holladay has entered into an agreement to sell a small portion of the property so purchased by him at a price of about two-thirds of the total price paid by the said Cauffiel at the public sale of the property."

Maria G. Morrow and Aimee G. Flinn filed answers briefly setting forth that Charles B. Holladay, the petitioner had purchased the property from Daniel Cauffiel who had been the highest bidder at the sale and that in the petition for partition the land as described by metes and bounds did not include the disputed triangle of land; that therefore, the disputed land was not sold and the trustees should not be required to execute a deed to the purchaser for the land in dispute.

At the hearing upon the rule, Maria G. Morrow did not testify, but Aimee G. Flinn, when called as a witness, testified that at the time of the sale she understood the scales and everything connected with the lumber yard were included in the property sold. There was no evidence that any of the tenants in

common knew or had any suspicion that the small triangle of land in question was not included in the description by metes and bounds set forth in the petition for partition. Also there was no evidence introduced to show that Cauffiel and not Holladay was the actual purchaser at the sale.

It is argued on behalf of the petitioner that Mrs. Flinn and Mrs. Morrow are estopped from denying petitioner's title to all of the real estate of the said Susan Green and particularly all that portion thereof lying upon the north side of Kennett Pike now consisting of the lumber yard, office, plant and environs of Green and Flinn, Inc.; that the purchaser had a right to assume that all of the lands of the co-parceners were being sold in the partition proceedings; that the purchaser had a right to rely upon the order of the court in the advertisement of the trustees in which order the lands on the northerly side of the pike was described as "that portion of said estate lying on the north side of Kennett Pike, now consisting of the lumber yard, office, plant and environs of Green and Flinn, Inc."

Counsel for the respondents argues that the court had no jurisdiction to partition property other than that described in the petition for partition and that as the small triangle of land in dispute was not included in the petition for partition, the judgment in partition did not disturb the common ownership of said small triangle of land; that by the greater weight of authority the doctrine of "caveat emptor" applies to a sale in partition proceedings and that this principle should be applied in the present case; that Daniel Cauffiel was the highest bidder at the sale of the property, and as the petitioner purchased the property from Daniel Cauffiel, he, Holladay, has no standing in this court to claim title to the property sold and his remedy, if any, is against his grantor, the actual purchaser at the sale.

By act of Legislature passed in February, 1915, *Chapter* 95, *Article* 2, of the *Revised Code of* 1915 and amendments thereto, the Orphans' Court of this State is given general jurisdiction in partition proceedings. The powers of this court in such proceedings are now broader in some respects than were the powers of the Court of Chancery prior to 1915. Upon the filing of a petition the court is authorized to issue a summons to the parties

interested not joining in the petition, requiring them to appear and show cause, if any they have, why partition of the premises should not be made. A decree, ordering partition of the real estate, may be made, or if partition should appear to be detrimental to the interests of the parties entitled, a sale by a trustee may be ordered. The sale, when made, is subject to the approval of the court and the proceeds of the sale are paid into court and are distributed among the parties entitled thereto under the court's direction.

The *Act of* 1915 in part provides:

*Section* 3272, *Revised Code of* 1915: "When any two or more persons hold lands * * * within this State as joint tenants or tenants in common, or as parceners * * * any one or more of them * * * may prefer a petition to the Orphans' Court * * * stating the facts, describing the lands * * * so held, and praying partition thereof among the several parties entitled to the same * * *.

*Section* 3279: "If * * * it shall * * * be shown * * * that partition of said premises will be detrimental to the interests of the parties entitled, the said Court shall make an order for the sale of the same."

Since the enactment of this statute, it has been the practice of this court to require all the known lands of the original co-tenancy to be included in the partition proceeding. If there should be an omission of any part of the land so held, any party to the proceeding could call the court's attention to this fact at any time before the sale, and perhaps before confirmation, and if the circumstances should warrant it, an order would be made for the inclusion of such omitted part. Of course, if a part of the lands of the original co-tenancy should be inadvertently omitted from the petition for partition, a discovery of this fact after sale and confirmation thereof would not prevent a later partition of such other lands. In this case the petition for partition did not include all the lands comprising the original co-tenancy, neither was there a petition filed by an interested party requesting the inclusion of the land which had been omitted, but what actually happened was that the court, upon the request of the parties, and acting, as it believed, for the best interests of the parties entitled, signed an order providing for the tract to be offered for sale in two ways:

First, in two parts:

"1. That that portion of the said estate lying upon the north side of Kennett Pike, now consisting of the lumber yard, office, plant and environs of Green and Flinn, Inc., shall first be offered at public auction and that the said premises shall be sold to the highest and best bidder therefor, subject, however, to the confirmation of this Court as hereinafter set out.

"2. That the rest, residue and remainder of the said premises shall be sold at public auction to the best and highest bidder therefor, subject, however, to the confirmation of this Court as hereinafter set out."

Second, the two parts to be sold as one:

"3. That the whole of said premises consisting of the two parcels of the said premises set out in 1 and 2 hereof shall be offered at said public auction and that the same shall be sold to the highest and best bidder therefor, subject," etc.

The description of part one as contained in the order, while in very general terms, unquestionably was inclusive of the tract now in dispute. No one interested in the proceeding knew that the disputed tract was not included in the description as contained in the petition until sometime after the confirmation of the sale and after the proceeds were distributed, when the purchaser had the property surveyed. It was then discovered that the land as described by metes and bounds in the petition did not include the tract in question. If the survey had not been made the purchaser could have continued in possession of the whole tract indefinitely, or at least until such time as the discrepancy should have been discovered, without objection on the part of any party to the partition proceeding. Thus we have the situation that the persons entitled to the lands and premises at the time of the sale intended to sell and believed the disputed tract was sold in the partition proceeding and the purchaser believed he was purchasing the whole tract, and the court was under the impression that it had made an order for the sale of all the lands originally of the co-tenancy. Under these facts and circumstances it certainly would be against good conscience and equity for the respondents to deny that the purchaser took title to the disputed tract and it is the court's opinion that they should be and are estopped from doing so.

In *Section* 2003, *Story's Equity Jurisprudence*, it is stated:

"If a party has an interest to prevent an act being done, and acquiesces in it so as to induce a reasonable belief that he consents to it, and the position of others, is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice than he would have, had it been done by his previous license."

The powers of this court to invoke the equitable principle of estoppel or other equitable principles in partition proceedings is not questioned by the respondents and it would seem they would not be warranted in raising this question in view of the provisions of *Section* 32, *Chapter* 95 of the *Revised Code of* 1915, *Code*, § 3301:

"3301. *Section* 32. ORPHANS' COURT; POWERS AND AUTHORITY; SCOPE OF:—For the purpose of effectuating the provisions of this Chapter, the Orphans' Court shall have, in addition to the jurisdiction and powers already conferred upon it, general equity powers touching the subject matter of this Chapter, and authority to make any order or decree not inconsistent with the provisions of this Chapter touching causes in partition, or matters incidental or pertaining thereto, which the right or justice of the cause may demand."

It was contended by the respondents;

First: That the jurisdiction of this court was limited to the lands and premises described by metes and bounds in the petition for partition and that the disputed tract of land had not been brought within the jurisdiction of the court;

Second: That the doctrine of "caveat emptor" applies in judicial sales.

Under ordinary circumstances, the first contention would be a meritorious one for the reason that the order of sale would direct the sale of the lands and premises as described in the petition and the advertisements of sale would contain a general description of the property as set forth in the petition. In the present case, however, at the request of the parties interested, there was a departure from the description in the partition and both in the order of sale and in the advertisements of the same, the lands and premises to be sold were described in terms such as to include the disputed tract of land. All the persons entitled to an interest in the land were in court and they should be held

to have had notice of the description of the land as it appeared in the order, they also received copies of the advertisements of sale which contained the same description appearing in the order of sale, and, therefore, they had actual notice of the property described. There was not the slightest objection with respect to the identity of the land on the part of anyone at any step in the proceeding up to and including the confirmation of the sale. Under all the circumstances, it seems reasonable to conclude that the effect of the order of sale made by the court, taken together with the other facts, was to incorporate the disputed tract as a part of the proceeding and bring it within the jurisdiction of the court, the same as if one or more of the parties had requested the court to do that very thing.

The next contention of the respondents is that the sale at which the petitioner bought the land was a judicial sale and that in such sales the doctrine of "caveat emptor" should apply. There is a decided conflict in the authorities in this country as to whether or not sales in partition proceedings are judicial sales, but under our statute there seems to be not much room for doubt that they are, as every material element constituting a judicial sale is present: The petition for partition is filed in the Orphans' Court, provision is made for service upon respondents, the court may order either partition or the sale of the property, and in case a sale is ordered a trustee is appointed to make the same, a return is made by the trustee to the court and the sale may be either confirmed, or not confirmed, and upon confirmation the proceeds of the sale are paid into court and are distributed under the court's direction. Under such facts the conclusion seems inevitable that sales in partition proceedings must be regarded as judicial ones in this State.

The sale being a judicial one, should the doctrine of "caveat emptor" apply? In two cases in this State, the doctrine of "caveat emptor" has been applied to Orphans' Court sales. *In re Estate of Donaghy*, 9 *Ch*. 441, 80 *A*. 721; *In re Estate of George G. Wheeler*, 11 *Ch*. 469, 101 *A*. 865.

I believe that this doctrine should apply generally to sales made under authority of the Orphans' Court. However, I believe it should not be applied in a case, where to permit its application

would be contrary to the principles of equity and fair dealing, with the result of working an injustice in the name of the law against an innocent person.

. Under the facts of the present case, the equities in favor of the purchaser appear to me to be rightfully regarded as superior to any legal rights which may rest in the respondents by reason of the doctrine of "caveat emptor" as applied to the purchaser of this land. In other words, in view of the very strong equities favoring the petitioner, it would not be right and proper to apply the doctrine of "caveat emptor" in this case.

In a note found on page 111 of 55 *Am. St. Rep.* it is stated:

"A court of equity in administering justice adapts itself to the peculiar circumstances of each case brought before it: *Higginbottom v. Short*, 25 Miss. 160, 57 *Am. Dec.* 198."

The only remaining point is one raised by the respondents, viz., that the petitioner was not the purchaser at the public sale and therefore is without standing in this court.

At the hearing upon the rule, there was no evidence introduced upon this question, and I think there is no necessity of saying anything more than that it appears from the records of this court that he was the purchaser, and that the sale to him was confirmed by the court; and that the respondents' share of the proceeds of the sale have been accepted by them. If the fact set forth in the return was incorrect and any party to the proceeding knew it to be incorrect, it was the duty of such party to call the error to the attention of the court prior to the confirmation of the sale, or in all events prior to the distribution and acceptance of the proceeds of the sale, in order that such error might be corrected. And upon failure of performance of that duty, the irregularity will be cured by the confirmation.

For the reasons stated, the rule is made absolute and the trustees, John Biggs, Jr., and Philip L. Garrett, are directed to execute and deliver to the petitioner, Charles B. Holladay, a deed conveying to him that portion of the lands lying upon the north side of Kennett Pike now consisting of the lumber yard, office, plant and environs of Green and Flinn, Inc., including therein the disputed land and premises.

Let an order be prepared accordingly.