IN THE MATTER OF THE PETITION OF FRANCES PETTYJOHN, ADMINISTRATRIX *c. t. a.* OF HARRY J. PETTYJOHN, DECEASED.

*Orphans' Court, Sussex, February 24, 1948.*

CAREY, J. sitting.

*H. Edward Maull,* for Frances Pettyjohn, administratrix *c. t. a.* of Harry J. Pettyjohn.

*Howard W. Bramhall,* for William E. Lank, purchaser.

CAREY, Judge:

The purchaser contends that the building on the lot at Slaughter Beach was improperly described in the advertisements of sale as a dwelling because the building is so dilapidated as to be unfit for human occupancy. Photographs were exhibited showing the bad state of repair into which the structure had fallen. For example, the windows have all been broken or removed, the doors are gone, and at least part of the plaster has fallen off the walls. The roof and the porch are likewise in poor condition. It is apparent from the photographs, however, that the structure has in the past been used as a dwelling or summer cottage.

No doubt there must be some stage in the deterioration process when the word "dwelling" ceases to be a fitting description of a building once used for living purposes, but it would certainly be difficult to announce a rule by which to judge all cases and I shall make no attempt to do so. For the purpose of the present case, I hold that

the use of the word in this instance was not such a misrepresentation as would justify an exception to the doctrine of *caveat emptor.* The purchaser lives but a few miles from the property and a most casual investigation on his part would have revealed the condition of the premises. It is not suggested that he took the trouble to inquire of the administratrix *c. t. a.,* or of her attorney, or of any one else concerning the building. In short, his predicament has been created by his own neglect to do what a reasonably prudent buyer ordinarily would do, namely, look at the property before the sale. Courts of equity do not assist a person under the circumstances prevailing here.

The purchaser cites the case of *Holladay v. Flinn,* 17 *Del. Ch.* 415, 149 *A.* 307, 311. The facts of that case have no similarity to those now before me and the case was cited solely for the rule therein stated as follows: the doctrine of *caveat emptor* should not be applied in a case, "where to permit its application would be contrary to the principles of equity and fair dealing, with the result of working an injustice in the name of the law against an innocent person." The case does, however, recognize the fact that the doctrine is usually applied to judicial sales, citing two prior Orphans' Court decisions in this State, to wit: *In re Wheeler's Estate,* 11 *Del. Ch.* 469, 101 *A.* 865; and *In re Donaghy's Estate,* 9 *Del. Ch.* 441, 80 *A.* 721. It is argued that the present case falls within the scope of the rule announced in *Holladay v. Flinn, supra,* and the cases of *Maxwell v. Mitchell,* 185 Ark. 248, 46 *S.W.* 2d 794, and *Hammond v. Cailleaud,* 111 *Cal.* 206, 43 *P.* 607, 52 *Am. St. Rep.* 167, are cited in support of that contention. The *Hammond* case is not pertinent. There the purchaser at the first sale, who failed to complete his purchase, was relieved of liability for the deficiency arising upon a second sale solely because the second sale was not conducted upon the same terms and conditions as the first one, the court finding that the deficiency occurred merely because of the change in those terms and conditions.

The *Maxwell* decision was also based upon a completely

different theory. The purchaser at the first sale had been a former occupant of the property. Prior to the sale and without the purchaser's knowledge, the mortgagee had caused certain timber to be cut and removed, thereby destroying the value of the land for the purpose to which the purchaser intended to devote it. A second sale was held which resulted in a deficiency. The mortgagee was denied the right to recover the amount of this deficiency, not upon the theory that the *caveat emptor* doctrine was inapplicable but upon the theory that such a recovery would permit him to profit by his own wrong, to wit, cutting the timber without any right to do so. The court, at page 795 of 46 *S.W. 2d*, expressly says:

"Now it is settled law that the rule of *caveat emptor* applies to judicial sales, and we do not intend by this opinion to impair it. One must know what he buys when he bids at a judicial sale. But it, nevertheless, appears inequitable to permit Mitchell to recover in this case. * * * To permit him to recover under the facts of this case would be to allow him to profit from his own wrongful act."

It is clear, therefore, that the case has no application to the present controversy.

Cases more directly in point are *Clarke v. Cooper*, 148 *Mo. App.* 230, 128 *S.W.* 47; *Ivrey v. Karr*, 182 *Md.* 463, 34 *A.* 2*d* 847; *Gerlach v. Ball*, 102 *N. J. Eq.* 85, 140 *A.* 235; and *The Monte Allegre*, 9 *Wheat.* 616, 6 *L. Ed.* 174. In all of them the purchasers were denied relief since the grounds relied upon were patent defects readily observable by a slight examination of the property.

Many cases included in the annotations found in 63 *A.L.R.* 974 and 68 *A.L.R.* 659 involve defective titles. In numerous jurisdictions, *caveat emptor* has been applied even to the extent of compelling a purchaser to accept a title clearly defective. Cases can be found, however, which indicate a strong trend away from the strict application of the rule as applied to doubtful title to land sold by judicial decree. Consideration of that point is beyond the demands of the present case, since I am now dealing with the entirely

different proposition of patent defects in the condition of the property itself.

A refusal to apply the doctrine here would be tantamount to its complete abandonment and to an overruling of the former decisions of this court cited above; it is hard to visualize a case where it would apply, if not here. When a person bids at a judicial sale without having inspected the property, he does so at his own risk as to defects which a reasonable examination would have disclosed, in the absence of fraud, misrepresentation, or mistake not resulting from his own negligence. 50 *C.J.S., Judicial Sales,* §§ 38, 57.

It does not necessarily follow that the sale should be confirmed. 3885, *Sec.* 9, *Ch.* 99, *Revised Code* 1935, expressly provides that this court shall not order a deed to be made by an administrator or executor unless the purchase money be first paid. *Rule* 6 of the Orphans' Court provides that the deposit taken from the purchaser "may be forfeited by the Court in case the balance of the purchase price be not paid according to the terms and conditions of the sale."

Rule 7 reads in part as follows:

"When any sale made by order of this Court is not confirmed because of the neglect or refusal of the purchaser to comply with the terms and conditions, then all expenses and costs incident to said sale and any loss on the second sale shall be paid or made out of the deposit made at the time of the sale."

The customary terms of judicial sales in Sussex County, which were followed in this instance, call for a deposit of twenty percentum of the amount bid to be paid on the day of sale, the balance to be paid prior to the time for return; and upon the purchaser's failure to comply with these terms "the percentum paid on the day of sale will be forfeited." In view of the statute, the rules of court and the actual terms of this sale as announced prior to its commencement, it seems clear that the maximum liability which this court can impose upon this purchaser is the forfeiture of the deposit. The orders entered *In re Wheeler's Estate, supra,* and *In re Donaghy's Estate, supra,* seem to recognize this

view by providing that those sales would be confirmed or the deposit declared forfeited at the purchaser's election. Whether the administratrix *c. t. a.* has any further remedy in another forum is not for this court to say. Moreover, I shall not now determine whether the purchaser is in contempt by stopping payment of his check; that point has not been argued but can be discussed later, if a ruling becomes necessary.

If, in view of what has been said, the purchaser sees fit to pay the full purchase price, the sale will be confirmed; or, if he sees fit to pay the twenty percentum only, that amount will be declared forfeited and a resale ordered.